[No. H034426. Sixth Dist. May 24, 2011.]

THE DOAN, Plaintiff and Appellant, v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Kershaw Cutter & Ratinoff, C. Brooks Cutter, Ian Hunter; Dreyer Babich Buccola Callaham & Wood, Robert A. Buccola, Steven M. Campora; Kenyon Yeates and Charity Kenyon for Plaintiff and Appellant.

Robie & Matthai, James R. Robie, Natalie A. Kouyoumdjian, Michael J. O'Neill; Skadden Arps Slate Meagher & Flom and Raoul D. Kennedy for Defendant and Respondent.

**OPINION**

**DUFFY, J.**—Plaintiff The Doan brought this action against defendant State Farm General Insurance Company. Suing for himself and a class of similarly situated policyholders, Doan alleged that State Farm breached its property

insurance contracts and violated California law in settling claims by employing improper valuation methods that overstate depreciation. The trial court sustained State Farm's demurrer to the second amended complaint, without leave to amend, and this appeal followed.

This appeal concerns the proper interpretation of Insurance Code provisions, particularly Insurance Code section 2071,[1] which requires an appraisal in cases where property valuation is disputed. As explained below, we conclude that the trial court has discretion to defer an appraisal pending a judicial declaration of the parties' rights under the insurance policies and statutes. Based on that conclusion, we reverse the judgment of dismissal as to the first four causes of action of Doan's complaint.

## STATEMENT OF THE CASE

### I. *Factual Background*[2]

Doan and the other policyholders were insured under property insurance policies issued by State Farm.[3] Doan's "policy stated that State Farm would pay the costs to repair or replace personal property at the time of the loss less depreciation. Depreciation is not defined in the policy."

Doan and the other policyholders suffered property losses covered under their policies. In Doan's case, a fire in June 2006 destroyed his home and its contents.

In October 2006, Doan "submitted his personal property claim to State Farm." Instead of using State Farm's form, Doan submitted his claim "on an excel spreadsheet, which set forth a physical depreciation amount for his personal property based on the actual condition of each item at the time of loss." By Doan's calculations, after deducting for depreciation "based upon the items' physical condition," the actual cash value of his personal property was nearly $174,000.

---

[1] Further statutory references are to the Insurance Code unless otherwise stated.

[2] The underlying facts are taken from the second amended complaint, which is the operative pleading here. (See, e.g., *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] [court will "assume the truth of the complaint's properly pleaded or implied factual allegations"]; *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1426 [271 Cal.Rptr. 270] ["material factual allegations of appellants' complaint are admitted by respondents' demurrer"].)

[3] As described in the operative pleading, the putative class comprises: "All California residents insured under a State Farm homeowners or commercial insurance policy who received a first party settlement, or offer for settlement, of a personal property claim for less than the applicable policy limits between December 31, 2004 and the time of trial of this action."

State Farm responded with a settlement offer that placed the actual cash value of Doan's personal property below $130,000. State Farm's value reflected depreciation of almost $82,000—nearly two and a half times Doan's depreciation figure. State Farm gave "no explanation" for the "depreciation increases." State Farm's depreciation figure "could not have been based on the condition of the item because the only information regarding the condition of [the] item" came from Doan's claim, and "State Farm never inspected any of the items or took any steps to determine the true amount of physical depreciation."

Doan "challenged the settlement offer, in particular the excessive depreciation" but "State Farm refused to re-open the claim for a determination of the true amount of physical depreciation of the personal property. State Farm likewise refused to alter its method of calculating depreciation."

Doan did not demand an appraisal under section 2071 "because an appraiser has no authority to determine whether State Farm's method of calculating depreciation is a breach of contract and a violation of section 2051."

## II. Procedural Background

### A. Initial Complaints and Demurrer

In December 2008, Doan filed his initial complaint in this matter, asserting causes of action for breach of contract, breach of implied covenant, and violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). In January 2009, Doan filed a first amended complaint, which added a fourth cause of action for violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.).

In March 2009, State Farm responded with a demurrer, which attacked all four causes of action of the complaint, and with a concurrent motion to strike, which was directed both at the class allegations and at the injunctive and restitutionary remedies sought in connection with the UCL claims. State Farm also filed an appendix of federal authority, and a request for judicial notice that contained court orders and decisions from other jurisdictions. In support of its demurrer, State Farm first argued that Doan could not state a cause of action for breach of contract or for breach of the implied covenant, because he had failed to submit his valuation dispute to appraisal as required by section 2071. State Farm next argued that Doan could not state a cause of action under the CLRA, because the act does not apply to insurance. State Farm also argued that the claims in the complaint are not suitable for class treatment.

Doan opposed the demurrer and motion to strike. He argued that his legal remedies under the Insurance Code are not limited to an appraisal, that his

CLRA claims are viable, and that all of the claims asserted in the complaint are suitable for class treatment.

State Farm replied to Doan's opposition, and it also objected to a declaration filed by his attorney.

In April 2009, following a hearing on the demurrer and motion to strike, the court issued its written order. After granting State Farm's request for judicial notice, the trial court sustained the demurrer in its entirety, giving plaintiffs 20 days' leave to amend. With respect to each of the first three causes of action of the complaint, the court explained: "Plaintiff failed to plead sufficient facts showing that he has satisfied the requirement of appraisal of such disputes." With respect to the fourth cause of action of the complaint, the court explained: "Plaintiff failed to plead sufficient facts showing that the CLRA applies to insurance." The court partially granted State Farm's motion to strike. As to the UCL remedies, the court struck Doan's request for restitution but refused to strike his request for injunctive relief; the court also refused to strike the class allegations in the complaint.

### B. Second Amended Complaint and Demurrer

In May 2009, Doan filed a second amended complaint based on the same factual allegations. As before, Doan alleged that "instead of considering the actual condition of the lost or destroyed items of personal property, State Farm uses a standard estimating system known as the 'Depreciation Guide' " that "arbitrarily calculates a depreciation percentage based on age and type of item, rather than the actual condition of a particular item." Doan further alleged that State Farm "does not provide that document to its insureds or otherwise explain how it calculates depreciation for the insured's loss." By doing so, Doan asserted, "State Farm violated its contracts" and insurance law, specifically section 2051 and its accompanying regulation. Doan also asserted: "State Farm's offer to settle personal property claims for less than the true value of such claims has resulted in damage to Plaintiff and the Class equal to the difference between the true value of the claim and the amount offered by State Farm." In addition to the four previous causes of action—breach of contract, breach of implied covenant, violation of the UCL, and violation of the CLRA—the second amended complaint also contained a new first cause of action for declaratory relief.

State Farm responded with a demurrer addressed to all causes of action of the complaint, with a motion to strike directed at the class allegations, and with a request for judicial notice. Doan filed opposition to the demurrer and motion to strike, to which State Farm replied.

Both parties essentially renewed the arguments they had made earlier in supporting and opposing the first demurrer. Their arguments thus addressed

the need for an appraisal under the Insurance Code, the applicability of the CLRA, and the suitability of the claims for class treatment. According to State Farm, Doan's addition of a cause of action for declaratory relief did nothing to cure the defects in his earlier pleading's Insurance Code claims. In State Farm's words, "as before, none of these causes of action is valid because an insured is required to submit a dispute regarding the amount of the calculated actual cash value of a loss to an appraisal." Doan disagreed, asserting that his "legal and equitable claims require determination and resolution of factual and legal issues far outside the ambit of what an appraiser may decide under the Insurance Code."

Following a hearing in late June 2009, the trial court issued its written order on State Farm's demurrer, motion to strike, and request for judicial notice. After granting the request for judicial notice, the court sustained State Farm's demurrer in its entirety, this time without leave to amend. Employing the same language as its earlier order, the court dispatched each of the first four causes of action of the complaint on the ground that "Plaintiff failed to plead sufficient facts showing that he has satisfied the requirement of appraisal of such disputes." The court also sustained the demurrer to the fifth cause of action of the complaint, again using the same language as its earlier order, on the ground that "Plaintiff failed to plead sufficient facts showing that the CLRA applies to insurance." The court denied State Farm's motion to strike as moot.

This appeal followed.[4]

## DISCUSSION

The sole issue on appeal arises from Doan's Insurance Code claims, which underlie the first four causes of action of the second amended complaint.[5]

---

[4] Doan filed his notice of appeal on July 6, 2009, which was after entry of the order sustaining the demurrer but before entry of the judgment of dismissal. The order itself is not appealable. (*Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202 [80 Cal.Rptr.3d 340].) But since an appealable judgment was later entered, the notice of appeal is merely premature. (*Ibid.*) In such cases, "we will liberally construe the appeal to have been taken from the judgment of dismissal." (*Ibid.*)

[5] Initially, the parties presented a second appellate issue concerning applicability of the CLRA, as asserted in the fifth cause of action of Doan's complaint. However, as stated in Doan's reply brief: "For purposes of this appeal and this action, appellant elects not to pursue his cause of action under the CLRA." Because Doan has abandoned his CLRA claim, we do not address it here. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].) As a practical consequence, the judgment of dismissal as to the fifth cause of action of Doan's complaint will be affirmed.

Additionally, there were other contested issues below, including the suitability of this action for class litigation and the availability of certain remedies in connection with Doan's UCL

The pivotal question is whether Doan may seek a judicial declaration of his rights under the statute and policy before submitting his valuation dispute to the statutory appraisal process. Doan argues that he has a statutory right to such a declaration and that the trial court erred in concluding that appraisal is his exclusive remedy. State Farm disputes the point in its respondent's brief, arguing that the statutory appraisal provision is mandatory, that it must be satisfied before seeking other relief, and that Doan's addition of a declaratory relief cause of action is an attempt to circumvent the statutory requirement. However, at oral argument, State Farm acknowledged the trial court's discretion to consider Doan's declaratory relief claim. The issue presented requires us to examine and construe provisions of the Insurance Code.

## I. *Standard of Review*

On appeal from a judgment of dismissal following sustentation of a demurrer, we exercise our independent judgment in determining whether the complaint states a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986 [74 Cal.Rptr.3d 47].) In undertaking our independent review, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see *Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.)

We review the court's denial of leave to amend for an abuse of discretion. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; *Buller v. Sutter Health, supra,* 160 Cal.App.4th at p. 986.) "It is an abuse of discretion to sustain a demurrer if there is a reasonable probability that the defect can be cured by amendment." (*Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 719 [17 Cal.Rptr.3d 374].) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) Where the issue of substantive law presents a question of statutory interpretation, our review is de novo. (*Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 578 [18 Cal.Rptr.3d 412]; see *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 657 [98 Cal.Rptr.2d 378] [on appeal from confirmation of insurance appraisal award, court reviews de novo issues that "primarily involve the interpretation of relevant statutes"].)

claims. Because neither party raises those issues in their appellate briefs, we do not address them here. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)

**1092**

## II. *Relevant Insurance Law Provisions*

■ Section 2070 states the general rule that all fire insurance policies must be on the standard form. (See, e.g., *Appalachian Insurance Co. v. Rivcom Corp.* (1982) 130 Cal.App.3d 818, 823 [182 Cal.Rptr. 11].) "One objective of the standard form is to promote 'better understanding of policy provisions among insurers and insureds and more uniform interpretation by the judiciary.' " (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 461 [10 Cal.Rptr.3d 617].)

■ Section 2071 sets forth the required contents of the standard-form fire insurance policy. (See *Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 400 [90 Cal.Rptr. 608, 475 P.2d 880].) As relevant here, the statute requires such policies to provide coverage "to the extent of the actual cash value of the property at the time of loss . . . ." (§ 2071, subd. (a).) As used in this section, actual cash value "is synonymous with 'fair market value.' " (*Jefferson Ins. Co.*, at p. 402.) Factors such as "age, condition, fitness for the buyer's purpose and similar considerations, would be relevant" in assessing fair market value. (*Cheeks v. California Fair Plan Assn.* (1998) 61 Cal.App.4th 423, 429 [71 Cal.Rptr.2d 568].)

■ Section 2071 requires fire insurance policies to include a provision for appraisal. (§ 2071, subd. (a).)[6] "Since its substance was first enacted in 1909, . . . section 2071 has directed that the standard form for fire insurance

---

[6] The appraisal provision reads as follows: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled." (§ 2071, subd. (a).)

For purposes of deciding this case, we will operate on the assumption that the appraisal provision is mandatory for disputes within its ambit. As the Insurance Code itself provides, "the word 'shall' is mandatory and the word 'may' is permissive, unless otherwise apparent from the context." (§ 16; see *Caminetti v. Superior Court* (1941) 16 Cal.2d 838, 842 [108 P.2d 911].) Case law likewise suggests that the provision is mandatory. (*Community Assisting*

policies include an appraisal provision to settle disagreements concerning the amount of loss." (*Gebers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1651 [45 Cal.Rptr.2d 725]; accord, *Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1032 [45 Cal.Rptr.3d 92]; see also *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 573 [103 Cal.Rptr.3d 197].) The statute also provides under the suit provision: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." (§ 2071, subd. (a).)

■ Section 2051 applies to "open" policies.[7] Under the statute as amended in 2004, when an open policy "requires payment of actual cash value" for a structure's contents, "the measure of the actual cash value recovery" is "the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less." (§ 2051, subd. (b)(2); see *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 53–54 [122 Cal.Rptr.3d 480] (*Kirkwood*).)

As provided in the accompanying regulations, any depreciation adjustments "shall reflect a measurable difference in market value attributable to the condition and age of the property and apply only to property normally subject to repair and replacement during the useful life of the property." (Cal. Code Regs., tit. 10, § 2695.9, subd. (f); see *Kirkwood, supra,* 193 Cal.App.4th at p. 54.)

### III. *The Nature of Insurance Appraisals*

■ An appraisal provision in an insurance policy constitutes an agreement for contractual arbitration. (Code Civ. Proc., § 1280, subd. (a) [defining arbitration agreement to include "agreements providing for valuations, appraisals and similar proceedings"]; *Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1129–1130 [70 Cal.Rptr.3d 626].) "Appraisal hearings are a form of arbitration and are generally subject to rules governing arbitration." (*Kacha v. Allstate Ins. Co., supra,* 140 Cal.App.4th at p. 1031; see also, e.g., *Community Assisting, supra,* 92 Cal.App.4th at p. 893; *Lambert,* at p. 1131; *Mahnke v. Superior Court, supra,* 180 Cal.App.4th at p. 573; *Kirkwood, supra,* 193 Cal.App.4th at p. 57.)

---

*Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886, 893 [112 Cal.Rptr.2d 304] (*Community Assisting*) ["section 2071 requires appraisal for resolution of contested claims"].)

[7] In an open policy, "the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss." (§ 411.)

Despite the fact that "an appraisal is a special form of limited arbitration, there are significant differences between the powers of an arbitrator and those of an appraiser." (*Kirkwood, supra*, 193 Cal.App.4th at p. 58.) Appraisers' powers are far more limited. (*Jefferson Ins. Co. v. Superior Court, supra*, 3 Cal.3d at p. 402.) "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." (*Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 253 [18 Cal.Rptr. 650]; accord, *Jefferson Ins. Co. v. Superior Court*, at p. 403; see also *Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498, 1504–1505 [77 Cal.Rptr.3d 88], and cases cited therein.) "Matters of statutory construction, contract interpretation and policy coverage are not encompassed within the ambit of a section 2071 appraisal." (*Kirkwood, supra*, at p. 53.)

## IV. *Exclusivity of the Appraisal Remedy*

The parties dispute whether the statutory appraisal remedy is exclusive. Arguing that it is not, Doan asserts a statutory right to a judicial declaration under Code of Civil Procedure section 1060. In its brief, State Farm argues: "The trial court was well within its discretion to dismiss plaintiff's cause of action for declaratory relief, particularly since it was added only after State Farm's demurrer was sustained, and only in an effort to circumvent section 2071's statutorily mandated procedure for resolving disputes regarding the amount of an insured's loss." The parties' opposing views on this point reflect their larger disagreement over the nature of Doan's claims. According to Doan, the pivotal question underlying his claims "is whether State Farm's conduct violates California law, its insurance contract, and its duties to its policy holders." By contrast, State Farm maintains that these claims are based entirely on Doan's assertion that it "offered him less than the full amount of the actual cash value of his damaged property." State Farm thus offers this argument in its brief: "Because each of plaintiff's causes of action seeks damages based upon the amount of his actual cash value loss, plaintiff must comply with the preliminary and necessary step of resolving the amount of the loss through an appraisal." As we now explain, we agree with Doan. Given the nature of Doan's claims, appraisal is not his exclusive remedy.

### A. *Declaratory Relief*

An action for declaratory relief is authorized by Code of Civil Procedure section 1060, which provides in pertinent part: "Any person interested under a written instrument, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and

duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. . . . The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

This provision "must be read together with section 1061, which states: 'The court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.' " (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [88 Cal.Rptr.3d 859, 200 P.3d 295].) "Admittedly the granting of [declaratory] relief is committed to the sound discretion of the court; but it has been held that where a multiplicity of actions would result unless the parties' rights are first declared and relief given in the same action, it is an abuse of discretion to deny the relief requested." (*Bridges v. Cal-Pacific Leasing Co.* (1971) 16 Cal.App.3d 118, 127 [93 Cal.Rptr. 796].) "The discretion to refuse to entertain an action in declaratory relief . . . may be exercised only when there is a basis in fact for the conclusion that the declaration is not necessary or proper." (*Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 683 [121 Cal.Rptr. 19]; see also, e.g., *In re Claudia E.* (2008) 163 Cal.App.4th 627, 634 [77 Cal.Rptr.3d 722].) In other words, "declaratory relief must be granted when the facts justifying that course are sufficiently alleged." (*Kessloff v. Pearson* (1951) 37 Cal.2d 609, 613 [233 P.2d 899]; see *Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217]; *Californians for Native Salmon etc. Assn. v. Department of Forestry, supra*, 221 Cal.App.3d at p. 1427.)

█ As the California Supreme Court recently reaffirmed, "declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." (*Meyer v. Sprint Spectrum L.P., supra*, 45 Cal.4th at p. 648.) "Resort to declaratory relief therefore is appropriate to attain judicial clarification of the parties' rights and obligations under the applicable law." (*Kirkwood, supra*, 193 Cal.App.4th at p. 59.) "Additionally, judicial economy strongly supports the use of declaratory relief to avoid duplicative actions to challenge [a party's] statutory interpretation or alleged policies." (*In re Claudia E., supra*, 163 Cal.App.4th at p. 633; see also, e.g., *Bess v. Park* (1955) 132 Cal.App.2d 49, 53 [281 P.2d 556] [declaratory relief proper where the controversy " 'was a recurring one involving the interpretation of a statute' " and the alternative remedy " 'would involve a multiplicity of actions going to the same point' "].)

■ "Declaratory relief operates prospectively, serving to set controversies at rest before obligations are repudiated, rights are invaded or wrongs are committed." (*Kirkwood, supra,* 193 Cal.App.4th at p. 59; see *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 607 [79 Cal.Rptr.3d 489].) Given its prospective nature, a declaratory relief award need not include damages. (*County of San Diego,* at p. 608.)

■ "The remedy of declarative relief is cumulative and does not restrict any other remedy. (Code Civ. Proc., § 1062.)" (*In re Claudia E., supra,* 163 Cal.App.4th at p. 633; see also, e.g., *Columbia Pictures Corp. v. DeToth, supra,* 26 Cal.2d at p. 761; *Kirkwood, supra,* 193 Cal.App.4th at p. 59.) On the other hand, it should not be used in cases "where an appropriate procedure has been provided by special statute, but a party is trying to circumvent the statutory procedure by filing a declaratory relief action." (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 744, fn. 16 [102 Cal.Rptr.3d 759].) For example, where "the Legislature specified the exclusive procedure . . . for litigating disputes regarding a person's right to obtain disclosure of public records" under the California Public Records Act (Gov. Code, § 6250 et seq.), "a superior court abuses its discretion in bypassing this statutory procedure and granting declaratory relief in an action initiated by a public agency pursuant to Code of Civil Procedure section 1060." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433 [121 Cal.Rptr.2d 844, 49 P.3d 194]; cf. *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 357 [15 Cal.Rptr.3d 430] [by contrast, Prop. 65 has no "specific statutory mechanisms" or comparable "procedural protections for the public . . . that would be circumvented" by a "preemptive declaratory relief" action].)

■ This is not a case in which the Legislature has provided an exclusive procedure for resolving disputes that extend beyond the amount of an insured's loss. To the contrary, "the regulations explicitly document that the section 2071 appraisal procedure does not limit recourse to other remedies." (*Kirkwood, supra,* 193 Cal.App.4th at p. 62.) As the regulations provide: "Once the appraisal provision under an insurance policy is invoked, the appraisal process shall not include any legal proceeding or procedure not specified under California Insurance Code Section 2071. Nothing herein is intended to preclude separate legal proceedings on issues unrelated to the appraisal process." (Cal. Code Regs., tit. 10, § 2695.9, subd. (e).)

## B. *The* Community Assisting *Case*

In urging a contrary result, State Farm relies on *Community Assisting, supra,* 92 Cal.App.4th 886. As we now explain, that case does not assist State Farm. As the *Community Assisting* court stated, "notwithstanding how the

insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy"—appraisal—"to which the parties must resort for determination of the amount of the loss." (*Id.* at p. 893.) But as noted in *Kirkwood*, "at the time *Community Assisting* was decided, the 2004 amendments to section 2051 had not been enacted and thus there was no statutory direction dictating how the insurer was to measure the actual cash value of recovery under an open policy." (*Kirkwood, supra*, 193 Cal.App.4th at p. 60.) And as the *Kirkwood* court also observed: "The *Community Assisting* court was not asked to consider the availability of declaratory relief to construe the statute and regulation governing depreciation practices under an open policy." (*Id.* at p. 60.) Here, by contrast, the right to declaratory relief on that very point has been placed at issue.

Apart from its lack of discussion concerning declaratory relief, there are other reasons for not applying *Community Assisting, supra*, 92 Cal.App.4th 886. Most importantly, that case can be distinguished based on the nature of the underlying allegations and their treatment by the court.

In *Community Assisting*, the plaintiff asserted an unfair business practice claim, which the court rejected for lack of any allegations that the defendants had "interfered with the appraisal process, deceived or coerced the insureds to settle for replacement cost less depreciation, or that they engaged in any acts which might have been a breach of the standard form policy." (*Community Assisting, supra*, 92 Cal.App.4th at p. 894.)

Here, by contrast, Doan alleges deception—the use of "secret" depreciation schedules "intended to hide State Farm's noncompliance with section 2051 from consumers"—as well as conduct constituting a breach of the policy.

The plaintiff in *Community Assisting* also asserted an unlawful business practice claim based on the allegation that the defendants were " 'adjusting property loss claims on the basis of replacement cost less depreciation rather than on the basis of fair market value, in violation of the mandates set forth in *Jefferson* . . . .' " (*Community Assisting, supra*, 92 Cal.App.4th at p. 891, citing *Jefferson Ins. Co. v. Superior Court, supra*, 3 Cal.3d 398.) Rejecting that claim, the court concluded that "plaintiff's complaint does not state an 'unlawful business practice' under the UCL because the simplistic legal formulation of the claim [(1)] mischaracterizes the holding in *Jefferson* and [(2)] fails to take into consideration the safeguard of the appraisal process provided by the Legislature within Insurance Code section 2071." (*Community Assisting, supra*, at p. 892.)

The unlawful business practice claim asserted in this case is distinguishable on both of the grounds cited in *Community Assisting, supra*, 92 Cal.App.4th at

page 892. First, the legal basis for Doan's allegation that State Farm violated the UCL is not based on an interpretation of case law but is instead drawn from specific statutory and regulatory language, which did not yet exist when *Community Assisting* was decided. (See *Kirkwood, supra,* 193 Cal.App.4th at p. 60.) Second, Doan's pleading did not ignore "the safeguard of the appraisal process provided by the Legislature within Insurance Code section 2071." (*Community Assisting*, at p. 892.) To the contrary, Doan addressed it directly, justifying his failure to demand an appraisal on the ground that "an appraiser has no authority to determine whether State Farm's method of calculating depreciation is a breach of contract and a violation of section 2051."

Beyond pleading differences, Doan's substantive claims have yet to be considered by a court, whereas in *Community Assisting*, the court reached the plaintiff's claims, rejecting them on the merits. (*Community Assisting, supra,* 92 Cal.App.4th at pp. 891–892, 894.) Here, the stated basis for the trial court's having sustained State Farm's demurrer was Doan's failure to satisfy "the requirement of appraisal of such disputes." The court thus did not reach the substance of Doan's claims.

In light of these distinctions, and because *Community Assisting* does not address the availability of declaratory relief, that case does not compel the conclusion that the appraisal procedure is exclusive, thereby making declaratory relief unavailable.

## C. *Conclusion*

■ Applying the foregoing authorities to the circumstances of this case, we conclude that the appraisal procedure provided by section 2071 is not an exclusive remedy, and that Doan may pursue his cause of action for declaratory relief.

■ The trial court's discretion to consider declaratory relief extends to cases like this, where a statutory construction question lies at the heart of the parties' dispute. (*Kirkwood, supra,* 193 Cal.App.4th at p. 59; *In re Claudia E., supra,* 163 Cal.App.4th at p. 633.) And "judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer's] statutory interpretation as reflected in its adjustment policy." (*Kirkwood*, at p. 63.) Doan thus may seek declaratory relief from the court.

## V. *The Court's Discretion to Resolve Legal Questions First*

■ As reflected both in statutory provisions and in case law, which we discuss below, trial courts have the power to sever arbitrable claims from

inarbitrable ones and to stay either the arbitration or the judicial proceedings pending the outcome of the other. (Code Civ. Proc., § 1281.2; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 [81 Cal.Rptr.3d 892].) Insurance appraisal proceedings likewise may be stayed to permit the resolution of other issues. (*Kirkwood, supra*, 193 Cal.App.4th at p. 62.)

The authority to bifurcate and stay raises another question: Which issues should be resolved first? Not surprisingly, the parties offer divergent answers to this question. Doan argues that the statutory and contractual interpretation issues should be taken up first. He characterizes those issues as "*preliminary* to any valuation of the amount of his loss under the insurance policy." In Doan's view, "until such questions are determined by the superior court, appraisal of the amount of loss would be both futile and premature." State Farm disagrees, urging that the appraisal must be undertaken first. State Farm characterizes the appraisal as "a preliminary process by which the insured must first demonstrate that the insurer paid less than the full amount of the insured's damaged or destroyed property." (Fn. omitted.) In State Farm's view, until it has been established through the appraisal process that plaintiff was paid less than the full amount of his loss, his other claims are "entirely premature and contrary to the law." Moreover, State Farm posits, "unless plaintiff can establish that he suffered damages as a result of State Farm's alleged violation of law . . . it is legally irrelevant that State Farm allegedly failed to comply with sections 2051 or 2695.9[, subdivision] (f)."

As explained below, we conclude that the trial court has discretion to stay the appraisal proceeding pending resolution of the legal questions. In this case, it appears that the trial court was unaware of its discretion to do so: the parties did not discuss Code of Civil Procedure section 1281.2 in their legal memoranda, and the court's ruling cites only section 2071 and *Community Assisting, supra*, 92 Cal.App.4th 886. For that reason, the order sustaining the demurrer as the first four causes of action of Doan's complaint cannot stand. (See *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 [66 Cal.Rptr.3d 87] ["trial court's failure to exercise discretion is itself an abuse of discretion"].)

### A. *Statutory Authority*

The statutory authority for staying arbitration is found in Code of Civil Procedure section 1281.2. Under the general rule set forth in that provision, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," subject to enumerated exceptions. (Code Civ. Proc., § 1281.2, subd. (a); see *Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412,

425 [84 Cal.Rptr.3d 152] [under Code Civ. Proc., § 1281.2, subd. (a), "the trial court makes the preliminary determination whether the petitioner is a party to, or can otherwise enforce, an arbitration agreement"].) The statute contains this relevant exception: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.2, subd. (c), 3d par.)

■ Under this statutory exception, the trial court has discretion to stay an order for arbitration if "the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary." (*RN Solution, Inc. v. Catholic Healthcare West, supra*, 165 Cal.App.4th at p. 1521, fn. omitted; cf. *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217] [another statutory exception contained in Code Civ. Proc., § 1281.2, subd. (c), "allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings"].)

■ As discussed above, the rules governing arbitration apply with equal force to insurance appraisals. (See, e.g., *Mahnke v. Superior Court, supra*, 180 Cal.App.4th at p. 573 [appraisal proceedings generally must "conform to the procedural requirements of the Arbitration Act"].) Because those rules include the statutory exception contained in Code of Civil Procedure section 1281.2, subdivision (c), it applies here. Applied in this context, that exception may be paraphrased as follows: "If the court determines that there are other issues between the [parties] which are not subject to [appraisal] . . . and that a determination of such issues may make the [appraisal] unnecessary, the court may delay [an appraisal] until the determination of such other issues or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.2, subd. (c), 3d par.)

The decision whether to stay the appraisal pending resolution of the interpretation issues is committed to the trial court's sound discretion. (See *Cronus Investments, Inc. v. Concierge Services, supra*, 35 Cal.4th at p. 393.) A number of factors inform that decision, including policy considerations. For example, as relevant here, there is a strong policy favoring arbitration. (See, e.g., *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 176 [110 Cal.Rptr.3d 180] [doubts resolved in favor of arbitration]; but see *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 772

[49 Cal.Rptr.3d 531] [there is no policy favoring arbitration where the dispute is not within the parties' agreement].) But there is also a strong policy favoring declaratory relief. (See, e.g., *Warren v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.3d at p. 683 [doubts resolved in favor of declaratory relief]; *Californians for Native Salmon etc. Assn. v. Department of Forestry, supra,* 221 Cal.App.3d at p. 1427 [same].) Another consideration is judicial economy. (See, e.g., *Cronus Investments, Inc. v. Concierge Services,* at p. 393 [court has "discretion not to enforce the arbitration agreement . . . in order to avoid . . . duplication of effort"]; *Bridges v. Cal-Pacific Leasing Co., supra,* 16 Cal.App.3d at p. 127 [it is improper for the court to deny declaratory relief "where a multiplicity of actions would result"]; *Bouton v. USAA Casualty Ins. Co., supra,* 167 Cal.App.4th at p. 426 [a declaration of the plaintiff's status as an insured "would expedite the proceedings on the subsequent petition to compel arbitration"].)

### B. *The* Kirkwood *Case*

The recent *Kirkwood* decision was not grounded on the statutory exception contained in Code of Civil Procedure section 1281.2, subdivision (c), but it nevertheless reflects that insurance appraisals—like arbitration proceedings—may be stayed pending the resolution of legal issues that lie outside the appraiser's jurisdiction. (*Kirkwood, supra,* 193 Cal.App.4th at p. 62.) *Kirkwood* recognized the trial court's authority to engage in "sequencing, in effect deferring the appraisal until the interpretation issues [are] resolved." (*Id.* at p. 60.) As *Kirkwood* also recognized, it is particularly appropriate to do so where a determination of the legal issues may obviate the need for an appraisal or inform the appraisal process. (*Id.* at pp. 62–63.)

In that case, the insured (Kirkwood) sued his insurer (California State Automobile Association Inter-Insurance Bureau (CSAA)), asserting causes of action for declaratory relief, breach of contract, bad faith, and violation of the UCL. (*Kirkwood, supra,* 193 Cal.App.4th at p. 55.) As in this case, the parties disagreed about the nature of their dispute. (*Id.* at p. 57.) According to CSAA, the pivotal question was whether it had paid Kirkwood "the full amount of the actual cash value for his personal property," which made the dispute "subject to mandatory appraisal under section 2071." (*Ibid.*) According to Kirkwood, however, the dispute centered on "the meaning of section 2051[, subdivision] (b) and CSAA's obligations thereunder." (*Ibid.*) For that reason, Kirkwood argued, he could "obtain declaratory relief as to the correct interpretation of section 2051[, subdivision] (b) combined with injunctive relief requiring CSAA to comply with the statute" prior to submitting to the appraisal process. (*Ibid.*)

Agreeing with the insured, the trial court decided to consider his legal claims first, before ordering an appraisal. (*Kirkwood, supra,* 193 Cal.App.4th

at p. 56.) The court thus "denied the motion to compel appraisal, without prejudice, so that CSAA could raise this issue again after the court resolved the issue of interpretation of section 2051[, subdivision] (b)." (*Ibid.*)

In affirming the trial court's ruling, the *Kirkwood* court said this: "We think the trial court was right in its conclusion that an appraisal was not mandated 'right now' because the declaratory relief cause of action asked the court to make a declaration that CSAA was misconstruing section 2051[, subdivision] (b). Denying the motion to compel appraisal without prejudice, the court was clear: 'I don't see how the plaintiff gets out of an appraisal later.' In other words, given the limited role of an appraisal, the court essentially bifurcated the case, determining that it should first issue a declaration on the statutory issue, 'and then have it inform the appraisal when it goes forward.' In short the court ruled that the agreement to arbitrate did not include the threshold contract and statutory interpretation issues, which were beyond the purview of the appraisers. We agree." (*Kirkwood, supra*, 193 Cal.App.4th at p. 57.) The *Kirkwood* court also recognized that the earlier decision in "*Community Assisting* does not mandate an appraisal in the first instance, before the section 2051[, subdivision] (b) interpretation issue is laid to rest." (*Id.* at p. 60, citing *Community Assisting, supra*, 92 Cal.App.4th at pp. 893–895.)

The issue before us here is identical to the question decided in *Kirkwood*: Must a party submit to an appraisal under section 2071 prior to obtaining a judicial determination of the meaning of section 2051? *Kirkwood* answered that question in the negative, concluding that a decision to stay the appraisal, in order to resolve "the interpretation issues" first, "does not run afoul of section 2071 or the arbitration statutes." (*Kirkwood, supra*, 193 Cal.App.4th at p. 60.) Although *Kirkwood* arose in a different procedural posture—a motion to compel appraisal rather than a demurrer—we nevertheless are convinced by its reasoning.[8]

The *Kirkwood* court offered a two-prong rationale for its conclusion. The premise for each of *Kirkwood*'s analytic prongs is present in this case.

___

[8] Given the differences in procedural posture, different review standards apply. In reviewing the trial court's decision to compel, deny, or stay appraisal (a form of arbitration), the abuse-of-discretion standard applies. (*Cronus Investments, Inc. v. Concierge Services, supra*, 35 Cal.4th at p. 393.) In reviewing the trial court's decision to sustain a demurrer, the de novo review standard applies. (*McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 415.) But despite differences in the applicable review standard, the underlying legal principles remain the same.

### 1. *Appraisers' Limited Jurisdiction*

 *Kirkwood*'s first prong rests on the limited powers of insurance appraisers. As *Kirkwood* observed, "the role of the appraisers is limited to appraising the loss, nothing more." (*Kirkwood, supra,* 193 Cal.App.4th at p. 60.) "Only the court, not an appraiser, can deliver declaratory relief as to the proper meaning of section 2051 within the context of [the insurer's] insurance adjusting practices." (*Id.* at p. 62.) "The contractual and statutory interpretation issues presented in the complaint are not encompassed within the appraisal process articulated in section 2071 or the insurance contract, and therefore appraisal was properly deferred in this case." (*Id.* at p. 62.)

Like *Kirkwood*, this case presents interpretation issues that are beyond the appraiser's jurisdiction. (*Kirkwood, supra,* 193 Cal.App.4th at p. 62.) As alleged in Doan's second amended complaint: "An appraiser or panel of appraisers under the standard form insurance contract has no authority to determine whether State Farm's conduct as alleged herein violates section 2051[, subdivision] (b)" and its accompanying regulation. Here, as in *Kirkwood*, plaintiff "has invoked the court's declaratory relief powers, requesting a declaration as to whether [the insurer's] practice of calculating depreciation based solely on age, and not physical depreciation or actual condition, violates section 2051[, subdivision] (b) and companion regulations. This claim is not subject to appraisal." (*Id.* at p. 60.)

This first prong of *Kirkwood* supports bifurcating the issues reserved to the court from those entrusted to the appraiser.

### 2. *Judicial Economy*

*Kirkwood*'s second prong rests on principles of judicial economy, with the goal of avoiding "duplicative future actions challenging [the insurer's] statutory interpretation as reflected in its adjustment policy." (*Kirkwood, supra,* 193 Cal.App.4th at p. 63.)

Principles of judicial economy point to the same result in this case as in *Kirkwood*. (*Kirkwood, supra,* 193 Cal.App.4th at p. 63.) Doan has alleged on information and belief that "the appraisal process would be cost prohibitive." Doan has also alleged that he "cannot obtain a fair hearing in the appraisal process unless and until State Farm is ordered and enjoined to stop violating section 2051 and section 2695.9[, subdivision] (f)." Finally, based on the insurance appraiser's limited authority, Doan has alleged that "it would be entirely futile for Plaintiff and the Class to submit any of their claims herein

to an appraiser." Moreover, as explained above, there is no need to demonstrate damages in order to qualify for declaratory relief. (*County of San Diego v. State of California, supra,* 164 Cal.App.4th at p. 608.) For that reason, we reject State Farm's contention that Doan must first establish—through an appraisal—that he has suffered damages.

As the *Kirkwood* court observed: "A judicial declaration that [the insurer's] interpretation of section 2051[, subdivision] (b) and its policy *does not* violate the statute would be the end of the line: no appraisal would be necessary, and insureds . . . would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior." (*Kirkwood, supra,* 193 Cal.App.4th at p. 63.) The same can be said here.

This second prong of *Kirkwood* supports a stay of the appraisal to allow a judicial determination of the interpretation issues.

### C. *Conclusion*

We agree with *Kirkwood*'s rationale, and we adopt it here. The *Kirkwood* analysis is bolstered by explicit statutory authority permitting the discretionary stay of appraisal proceedings pending resolution of issues outside the appraisers' limited jurisdiction. (Code Civ. Proc., § 1281.2, subd. (c).)

 Given the court's discretion to stay the appraisal, section 2071 cannot be interpreted to include an inflexible requirement compelling an insured to submit to an appraisal before seeking a judicial determination of issues that are not within the ambit of the appraisal. That conclusion is buttressed by recognition of the trial court's broad discretion to consider declaratory relief claims, which State Farm acknowledged at oral argument. That conclusion governs the first four causes of action of Doan's complaint, which all depend on the same assertions—to wit, that State Farm violated section 2051 and its companion regulation, thereby breaching the insurance contract, breaching the implied covenant of good faith and fair dealing, and engaging in unlawful and unfair business practices.

Because the trial court apparently relied on a contrary interpretation of section 2071 in sustaining State Farm's demurrer to the first four causes of action of Doan's complaint, the judgment dismissing those causes of action cannot stand.

## DISPOSITION

The judgment of dismissal is reversed in part and affirmed in part. The trial court is directed to (1) enter a new and different order overruling State Farm's demurrer to the first four causes of action of Doan's second amended complaint and sustaining the demurrer to the fifth cause of action only, and (2) exercise its discretion to consider whether and when declaratory relief should be granted. Doan shall have costs on appeal.

Bamattre-Manoukian, Acting P. J., and Lucas, J.,[*] concurred.

---

[*]Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.