Filed 9/19/16  Shah v. Fidelity Nat. Title Ins. Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAY C. SHAH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY,<br><br>    Defendant and Respondent. | H038521<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV-203571) |

The allegations in this case illustrate the very purpose of title insurance.  Plaintiff Jay C. Shah filed a claim with defendant Fidelity National Title Insurance Company after discovering that the purported fee simple interest he purchased and for which he obtained title insurance was actually a life estate.  Defendant denied plaintiff's claim, contending that the policy had terminated when plaintiff transferred his entire interest in the property through multiple conveyances, all occurring after the life tenant died.

Plaintiff appeals from a judgment entered after the trial court sustained defendant's demurrer without leave to amend.  Plaintiff argues that the trial court erred when it determined he failed to state causes of action for breach of contract and breach of the covenant of good faith and fair dealing arising from defendant's refusal to pay plaintiff's claim.  For the reasons stated here, we will reverse the judgment.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

This factual summary is based on plaintiff's first amended complaint (Complaint) as well as recorded conveyances for the subject property.[1]

## A.      ORIGINAL GRANT DEED AND TITLE INSURANCE POLICY (1995)

In December 1995, Mary R. Silva transferred her interest in certain grazing property via grant deed to "Jay C. Shah, Living Trust Dated June 8, 1993."[2] Plaintiff believed he was obtaining fee simple title to the property and paid $350,000, which, according to the Complaint, represented the fair market value for fee simple title. Unbeknownst to plaintiff, Silva held only a life estate in the property; her children held the remainder interest.

To insure his purchase, plaintiff obtained a title insurance policy from defendant. Much of the original insurance policy was lost or destroyed, but Schedules A and B of the original policy were located in defendant's records. For the missing portions of the policy, the parties agree that the general terms were taken from the California Land Title Association Standard Policy – 1990 Form (CLTA 1990 Form).

Section 1(a) of the CLTA 1990 Form's Conditions and Stipulations defines "insured" as "the insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." Schedule A lists "Jay C. Shah, Living Trust Dated June 8, 1993" as both the insured party and the party to whom "[t]itle to the estate or

---

[1] At defendant's request, the trial court took judicial notice of these recorded documents. We likewise take judicial notice of the recorded documents. (Evid. Code, § 459, subd. (a)(1).)

[2] Many of the title descriptions are listed in all capital letters. While we retain the exact text of the titles, for stylistic reasons we change the capitalization of the descriptions.

interest in land is vested … ." It further states that the type of interest or estate insured is a fee simple interest.

Regarding continuation of insurance, section 2(b) of the Conditions and Stipulations, entitled "After Conveyance of Title by an Insured," states in relevant part: "The coverage of this policy shall continue in force as of [December 29, 1995] in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest."

## B.    SUBSEQUENT DEEDS (1998–2009)

In July 1998, plaintiff transferred the property by grant deed from "Jay C. Shah, a single man and as trustee of the Jay C. Shah Revocable Living Trust Dated June 8, 1993, who acquired title as 'Jay C. Shah, Living Trust Dated June 8, 1993' " to "Jay C. Shah, Trustee of the Jay C. Shah Revocable Living Trust Dated June 8, 1993."

Silva died in May 2002, meaning that title to the property plaintiff thought he held actually passed to Silva's children by operation of law.

From June 2002 through 2009, over a dozen conveyances were recorded for the property involving plaintiff (in various capacities), his parents, and his wife. Specifically, in June 2002, plaintiff, as trustee of his living trust, transferred the property via grant deed to his parents, "Chandrakant K. Shah and Mrudula C. Shah, as Trustees of the Shah 1978 Revocable Trust, dated January 22, 1978." The Complaint alleges that this transfer was an equitable mortgage. (Citing Civ. Code, § 2924, subd. (a).) From 2002 to 2006, recorded deeds suggest the property changed hands between plaintiff as trustee of his living trust, his parents as trustees of their living trust, and his parents as husband and wife. In November 2006 plaintiff signed a grant deed conveying the property from "Jay C. Shah, a married man as his sole and separate property" to his parents as trustees of their trust. Between December 2006 and May 2007, a series of grant deeds were

3

recorded by plaintiff's parents as trustees of their trust as well as by plaintiff's wife as the spouse of plaintiff consistently conveying the property to "Jay C. Shah, a married man as his sole and separate property."

In September 2007, plaintiff borrowed $350,000 against the property from Conquest Investments, LLC, secured by a deed of trust (Conquest deed of trust) recorded with the Santa Clara County Recorder. After plaintiff failed to make payments on the Conquest deed of trust, a notice of default and notice of trustee's sale were recorded and a trustee's sale was set for February 3, 2009.

## C.     ATTEMPT TO REFINANCE AND DISCOVERY OF TITLE PROBLEM

To prevent the trustee's sale, plaintiff attempted to refinance the deed of trust with a loan broker. In January 2009, the broker's title insurance company informed plaintiff that he did not actually possess fee title to the property. The title officer discovered that Mary Silva acquired her interest via a decree of distribution in 1959 but that her interest only extended "for and during the term of her natural life and upon her death then to the issue of her body … ." Thus, when plaintiff purchased the property via grant deed from Silva in 1995, he acquired only a life estate for the term of Silva's life, also known as a life estate *pur autre vie*.[3] When Silva died in 2002, plaintiff's estate in the property was extinguished. Plaintiff alleges he was unable to refinance the Conquest deed of trust because of the cloud on title, which led to the trustee's sale. Bob and Jody Schwartz, as husband and wife, made the high bid at the February 2009 trustee's sale and recorded a trustee's deed, which conveyed plaintiff's interest in the property to the Schwartzes.

Although plaintiff discovered the cloud on his title in January 2009, before the trustee's sale, he did not contact defendant seeking coverage under his title insurance policy until March 2009. Defendant denied plaintiff's claim in September 2009, asserting that plaintiff's numerous recorded conveyances between himself and his family

---

[3] Meaning "[f]or or during a period measured by another's life." (Black's Law Dict. (10th ed. 2014) p. 1429, col. 2.)

4

had terminated the policy. Defendant relied on section 2(b) of the policy, "After Conveyance of Title by an Insured," to deny the claim.

While plaintiff attempted to convince defendant to accept his claim, he simultaneously attempted to regain title to the property by filing a quiet title action and negotiating with Silva's heirs; the Schwartzes; and interested parties from the Conquest deed of trust. Plaintiff obtained quitclaim deeds from Silva's heirs at some point in 2009. In March 2010, plaintiff negotiated a settlement whereby he financed payment of the Conquest deed of trust debt, obtained a rescission of the Schwartzes' trustee's deed, and received quitclaim deeds from all defendants to the quiet title action, giving him fee simple title to the property.

## D.    TRIAL COURT PROCEEDINGS

Plaintiff filed his original complaint in June 2011, which was met by a demurrer. Before a hearing could be held on the demurrer, plaintiff filed an amended complaint, alleging that by denying his claim for coverage, defendant breached both the title insurance policy and the contract's implied covenant of good faith and fair dealing. Regarding defendant's claim that plaintiff's conveyances terminated the title insurance policy, plaintiff specifically alleged that the conveyances were equitable mortgages that did not pass title but rather served as liens on the property.

Defendant renewed its demurrer based on a failure to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) After a hearing, the court sustained the demurrer without leave to amend. The trial court assumed for purposes of the demurrer that the conveyances to plaintiff's parents were equitable mortgages but decided that when the parents conveyed their interests back to plaintiff in his individual capacity he was no longer covered by the title insurance policy, which only covered plaintiff as trustee of his living trust. The court also noted that one conveyance was between plaintiff in his individual capacity and his parents as trustees, demonstrating

5

that plaintiff's living trust had previously conveyed away its interest in the property, thereby terminating the title insurance.

## II. DISCUSSION

The viability of both causes of action turns on whether the title insurance policy terminated before plaintiff submitted his claim to defendant in March 2009.

### A. STANDARD OF REVIEW

Defendant demurred to the Complaint on the ground that "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) We review a judgment of dismissal based on a sustained demurrer de novo. (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1091 (*Doan*).) We will reverse the judgment of dismissal if the allegations of the complaint state a cause of action "under any legal theory." (*Ibid.*)

We assume the truth of all facts alleged in the complaint unless those facts are contradicted by judicially noticeable materials. (*Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903, 906 (*Stoney Creek*); *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 82.) But we do not consider conclusory factual or legal allegations contained in the Complaint (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953 (*B & P Development Corp.*)); and facts not alleged in the Complaint are presumed not to exist. (*Melikian v. Truck Ins. Exchange* (1955) 133 Cal.App.2d 113, 115.) Litigants may allege inconsistent theories but not inconsistent facts (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 827–828), and "[s]pecific factual allegations modify and limit inconsistent general statements." (*B & P Development Corp.*, *supra*, at p. 953.)

### B. ANALYSIS

The name of the insured on the title insurance policy is "Jay C. Shah, Living Trust Dated June 8, 1993." A trust is not a legal entity in California and legal title to trust property is held by the trustee. (*Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486,

522.) Because the trust itself could not be the insured, the policy covered either plaintiff in his individual capacity or plaintiff in his capacity as trustee of his revocable living trust. Based on the 1998 deed in which plaintiff transferred title from "Jay C. Shah, Living Trust dated June 8, 1993" to "Jay C. Shah, Trustee of the Jay C. Shah Revocable Living Trust Dated June 8, 1993," it appears plaintiff intended to hold the insurance policy as trustee of his living trust. Defendant does not contend that plaintiff's 1998 deed was inconsistent with the mutual intent of the parties in insuring "Jay C. Shah, Living Trust Dated June 8, 1993." Thus, we will assume for purposes of this opinion that plaintiff held the title insurance policy as the trustee of his living trust.

Section 2(b) of the title insurance policy, on which defendant relied to deny coverage, is entitled "After Conveyance of Title by an Insured." The section provides that plaintiff's coverage continues "so long as the insured retains an estate or interest in the land ... ." Plaintiff's interest in the property was a life estate measured by the life of the grantor, Mary Silva, who died in May 2002. At that point, plaintiff lost his estate or interest in the property by operation of law. (*Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 631 ["A life estate terminates upon death by operation of law."].)

Given that plaintiff's loss of an estate or interest in the property occurred by *operation of law* upon Silva's death, rather than by plaintiff's *conveyance* of title, we asked the parties for supplemental briefing on the following issues: whether any deed after Silva's death conveyed title; whether there was any basis other than section 2(b) to terminate the policy if the deeds after Silva's death did not convey title; whether terminating insurance due to a defect in the original title insured by the policy would violate the objectively reasonable expectations of the insured; and whether terminating insurance due to a defect in the original title insured by the policy would violate the insurance contract's implied covenant of good faith and fair dealing.

Arguing that plaintiff "retained an interest in the property that did not expire when the life tenant died," defendant describes ways in which plaintiff could have obtained the

7

fee title he thought he had purchased, including by obtaining a conveyance of the remainder interest from Silva's children during her life or by quieting title to the property based on adverse possession under color of title (Civ. Code, § 1007; Code Civ. Proc., § 325, subd. (b)). In reviewing a demurrer sustained without leave to amend, we are bound by the allegations of the complaint. (*Doan, supra,* 195 Cal.App.4th at p. 1091.) As far as can be determined from the Complaint, no such method of obtaining fee title was ever utilized before plaintiff submitted his claim.

We acknowledge the possibility that plaintiff had obtained a marketable estate or interest in the property (through adverse possession or other means) sufficient to have terminated the insurance policy by conveyance after Silva's death but before he filed his claim in 2009. But that question would require factual development in the trial court. Defendant appears to acknowledge the inadequacy of the record in its supplemental brief, which repeatedly refers to the need to "obtain evidence and expert testimony" to address the issues raised in our request for further briefing. On the limited record at this early stage in the proceedings, and assuming the truth of all allegations in the Complaint (*Stoney Creek, supra,* 12 Cal.App.3d at p. 906), we cannot conclude as a matter of law that coverage under plaintiff's title insurance policy terminated before he submitted his claim.

### III.      DISPOSITION

The judgment is reversed and the matter is remanded with instructions to enter a new order overruling defendant's demurrer to plaintiff's first amended complaint. Plaintiff is entitled to his costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.