[No. D046961. Fourth Dist., Div. One. June 1, 2006.]

JEFF KACHA, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Joseph S. Carmellino for Plaintiff and Appellant.

Berger Kahn and Dale A. Amato for Defendant and Respondent.

## Opinion

**McCONNELL, P. J.**—This is an appeal from a judgment confirming an insurance appraisal award. It is settled that "appraisers have the power only to determine a specific question of fact, 'namely, the actual cash value of the insured [item].' " (*Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1063 [207 Cal.Rptr. 104] (*Sharma*); Ins. Code,[1] § 2071.) Plaintiff Jeff Kacha contends the award here exceeds the appraisers' jurisdiction as it includes determinations of whether certain damages were covered by his insurer, defendant Allstate Insurance Company (Allstate), and the trial court erred by finding he waived the jurisdictional rule of *Sharma* and section 2071. Kacha also contends the court erred by finding he is precluded from challenging the appraisal award because he took possession of, but did not negotiate, checks Allstate provided him to cover the award.

We agree with Kacha on both points. We reverse the judgment and direct the trial court on remand to enter an order vacating the appraisal award.

### FACTUAL AND PROCEDURAL BACKGROUND

Kacha and his wife Tania Kacha's[2] custom home in the Scripps Ranch area of San Diego was completed in July 2002. In October 2003 the home and personal property were damaged by heat and smoke in a wildfire designated the Cedar Fire. Homes on three sides of Kacha's property burned to the ground.

---

[1] Statutory references are to the Insurance Code except when otherwise specified.

[2] Tania Kacha is not a party to this action.

Allstate provided Kacha's homeowners insurance. Allstate valued the cost to clean the home and contents at $25,799.77, and it paid that amount to Kacha. Kacha then retained Kevin Dawson, of Professional Insurance Evaluations, a licensed public adjuster, to assist him in the presentation of his claim. In December 2003 Kacha demanded an appraisal, as provided by Allstate's policy if the parties could not agree on the amount of loss.

In May 2004 Kacha submitted a sworn statement claiming $639,688.82 in covered losses, supported by inventories Dawson prepared. The claim included the cleaning of damaged property "when applicable" and "the repair or replacement of permanently damaged property." The same month, Kacha petitioned the superior court to compel an appraisal and appoint an umpire. Allstate opposed the petition on the ground of prematurity, arguing an appraisal was inappropriate until and unless the extent of covered loss was established, on which a value could be determined. Allstate advised the court that under *Sharma, supra,* 160 Cal.App.3d 1060, "an appraisal panel is empowered to determine the value of a loss and not coverage issues, such as the extent of the loss."

The court granted Kacha's motion to compel an appraisal and appointed the Honorable Anthony Joseph, a retired superior court judge, as umpire. Each of the parties was entitled to choose an arbitrator. Kacha chose Keith Charleston and Allstate chose Louis Heilbron. Under the policy, if the parties' appraisers could not agree on valuation, a written award agreed on by Judge Joseph and one of the appraisers would determine valuation.

In an August 2004 letter, Judge Joseph asked the parties to agree on "a draft form for the award." The following month Judge Joseph renewed his request.

In late October 2004 Allstate provided Kacha's attorney, Peter Lawrence, and Dawson with a draft form appraisal award. The form included several pages of damaged items Kacha claimed were covered under the policy, such as kitchen cabinets and flooring, garage cabinets and flooring, and carpet and interior walls. For each item, the form provided: "Damage, if any, to the [e.g., kitchen cabinets] attributable to the fire of October 26, 2003." The form included a line for the entry of a dollar amount for each item.

The appraisal was held at Kacha's home, on November 15 and 16, 2004, and January 4, 2005. Allstate presented an appraisal brief that stated, "[T]his is not your standard appraisal where value of the loss is the only issue; there are still many issues regarding the existence and scope of damage that have

not been resolved between the parties. This is due in large part to the insureds' prematurely demanding appraisal without coming to an agreement upon a scope of loss or even providing Allstate with the specifics of their claim." The brief asserted that damage to numerous items was not caused by smoke or heat from the Cedar Fire.

On November 15, Allstate provided the panel members with its draft appraisal award form. The parties had not yet agreed to the form, however, and Judge Joseph instructed them to do so before the conclusion of the hearing.

On November 16, the parties stipulated in writing that the appraisal panel "should utilize replacement cost value less depreciation to determine the actual cash value of the loss." The parties also stipulated to the amount of loss for certain items, including interior light fixtures and cleaning of windows, HVAC (heating, ventilation and air conditioning) ducts and "[o]zone." The same date, Kacha increased the value of his loss to $858,393.87, and that prompted Judge Joseph to schedule the third hearing day.

On November 30, Dawson sent Allstate's attorney, Dale Amato, via e-mail, a proposed revised form for the appraisal award. Dawson reorganized the form by adding the italicized language to the following introductory paragraph that appeared in Amato's version: "We, the undersigned, . . . in accordance with our appointment as Appraisers and/or umpire, without bias or personal interest, have observed the subject property and have examined the evidence submitted to us and, in accordance with our appointments, have made the following determination and award *of damage, if any, to the structure of the insured's residence attributable to the fire of October 26, 2003.*" (Italics added.) The form then listed the claimed items, without repeating the italicized language for each item, as Amato's version had, and provided space for an award for each item.

In a December 11 e-mail, Amato sent Dawson minor amendments to the appraisal award form, including the deletion of the words "structure of the" in the italicized sentence in the preceding paragraph, and asked Dawson to let him know if they were acceptable. In a December 22 e-mail, Dawson responded, "I reviewed the changes, all is fine." Accordingly, the introductory paragraph of the appraisal award form stated the panel members "have made the following determination and award of damage, if any, to the insured's residence attributable to the fire of October 26, 2003."

Allstate submitted a supplemental appraisal brief, again claiming certain damages were unrelated to the Cedar Fire. For one example, Allstate asserted that discoloration of a door "could have been caused by sunlight, weather and/or a breakdown of the factory applied finish." Allstate urged the appraisal panel to award Kacha nothing for items that were damaged but, according to Allstate, not in the Cedar Fire.

In a reply appraisal brief dated December 29, Dawson, on behalf of Kacha, objected that there "cannot be a determination of coverage or cause of loss by this [p]anel." Dawson urged the panel "to establish a value based upon the damage to the premises not based upon arguments by Allstate regarding blame, responsibility and speculative theories on the cause of loss." In closing, the brief stated, "We implore you to ignore the theories of cause of loss, as those issues are irrelevant to the appraisal process."

On December 30, Amato submitted to the panel the appraisal award form he and Dawson negotiated. In an accompanying letter to the panel, Amato stated, "Please note that the language of the appraisal award specifically authorizes the appraisal panel to determine if there is any damage to the Kacha home [as] a result of the fire of October 26, 2003." Amato advised, "It is also Allstate's *position* that the strictures of [*Sharma, supra*] 160 Cal.App.3d 1060, . . . are not applicable to the instant appraisal hearing." (Italics added.) Amato faxed a copy of the letter to Dawson.

Dawson immediately wrote to Amato that "[w]e are concerned about your continued communication with the [a]ppraisal [p]anel outside of the agreed briefing schedule," and "[i]t is time to allow the [p]anel to consider the evidence, establish an [a]ward according to the claims and to submit that [a]ward to the parties for payment." The letter also stated, "If you have any legal arguments that you would like to make we invite you to return to the San Diego Superior Court after the [a]ward is rendered. Thereafter, [the court] will surely hear your arguments."

Several weeks after the last day of the hearing, January 4, 2005, the panel delivered an appraisal award for $163,792 in replacement cost value and $155,993 in actual cash value. It was signed by Judge Joseph and Heilbron, but not by Charleston. The award included amounts of zero for numerous items, such as marble and stone work in a bathroom and a shower, an interior brass and stainless steel banister, the front entry door, baseboards, concrete pool and decking, block fencing, a retaining wall cap, the driveway and entry walk, speakers, amplifiers and video games. Allstate sent Kacha two checks totaling $138,010.07, representing the $163,792 sum, less the amount it already paid on the claim. Kacha, however, did not endorse or negotiate the checks.

Kacha applied to the appraisal panel to correct the award, arguing the panel exceeded its authority by making coverage determinations reserved to Allstate. The petition also stated, "We informed the [p]anel that we did not give you the authority to determine or decide if a loss occurred or if the loss claimed caused the damage."

Allstate opposed the application, and Judge Joseph and Heilbron issued an order denying it. The order stated "the form agreed upon by both sides for the 'appraisal award' provided that the 'determinations and award of damages, if any' attributable to the fire should be determined by the panel. It is clear the parties stipulated to determinations by the panel of whether damage had occurred."

Kacha then filed a petition in superior court to vacate the appraisal award. In support, Dawson submitted declarations that stated at the last hearing day on January 4 he immediately objected to the form of the appraisal award when Amato took the position it allowed the appraisers to determine coverage issues. One of Dawson's declarations stated he advised, "Our position is that the determination of damage [or coverage] was to be made by the parties and evaluation of the damage was to be made by the appraisal [panel]."

Lawrence, Kacha's attorney, also submitted a declaration. It stated that "[d]uring discussions with the [p]anel and Allstate's counsel, we made it clear that we expected to establish the value of the submitted loss. Allstate's attorney took the position that the panel should determine the cause or causes of the damage to the Kacha's real and personal property. We informed Allstate that their multiple theories of causation were inappropriate and inadmissible evidence in an appraisal." The declaration also stated "Dawson and I, never agreed that the panel could determine causation or damage to the property. No agreement on the [p]anel's authority to determine damage ever occurred." It also stated that during the hearing, whenever Allstate argued a lack of coverage he or Dawson objected.

In opposition, Allstate argued that despite the declarations Kacha submitted, "the drafting history of the appraisal award clearly evidences that the parties agreed to allow the panel to determine if any items were actually damaged by the Cedar [F]ire." Amato submitted a declaration that stated on January 4, the final day of the appraisal proceeding, "[a]ny attempt by Kacha . . . to repudiate [the appraisal award form] was met with resistance by panel members, all [of] whom indicated that based upon the form of the award that was presented on the first day and how the evidence was being received, . . . the panel was proceeding on the basis that they were to decide if any damage had occurred."

After a hearing, the court took the matter under submission. It later issued an order denying Kacha's petition and confirming the appraisal award. The court found that because of the language of the appraisal award form to which Dawson had agreed, the rule of *Sharma, supra,* 160 Cal.App.3d 1060, was inapplicable and the appraisers were authorized to determine coverage issues. Further, the court found Kacha "accepted and retained" Allstate's checks, and by doing so waived his right to challenge the appraisal award. On August 30, 2005, judgment was entered in conformance with the order.

## DISCUSSION

## I

### *Standard of Review*

Appraisal hearings are a form of arbitration and are generally subject to the rules governing arbitration. Judicial review of an arbitration, or appraisal award, is circumscribed. (See *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1345 [83 Cal.Rptr.2d 340].) " 'Courts may not review either the merits of the controversy or the sufficiency of the evidence supporting the award.' " (*Ibid.*) The court, however, shall vacate an appraisal award under certain circumstances, including when the appraisers "exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).)

We review the trial court's ruling on a challenge to an appraisal award under a de novo standard, drawing every reasonable inference to support the award. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 24 [96 Cal.Rptr.2d 553].) To the extent the court's ruling rests on issues of disputed fact, however, we apply the substantial evidence test. (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 57 [16 Cal.Rptr.3d 687].) " '[I]f the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203–1204 [52 Cal.Rptr.2d 518].)

## II

### *No Waiver of Section 2071 or* Sharma

### A

We are persuaded by Kacha's contention the trial court erred by finding the form of the appraisal award constituted a waiver of his rights under section 2071 and the rule of *Sharma.*

"Since its substance was first enacted in 1909, . . . section 2071 has directed that the standard form for fire insurance policies include an appraisal provision to settle disagreements concerning *the amount of loss.*" (*Gebers v. State Farm General Ins. Co.* (1995) 38 Cal.App.4th 1648, 1651 [45 Cal.Rptr.2d 725], italics added.) The policy must provide for an appraisal when "the insured and this company shall fail to agree as to *the actual cash value or the amount of loss.*" (§ 2071, subd. (a), italics added.) It must also state the appraisers "shall . . . *appraise the loss* . . . and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company *shall determine the amount of actual cash value and loss.*" (*Ibid.,* italics added.) The Allstate policy covering Kacha's property recites this language.

As our high court held in *Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403 [90 Cal.Rptr. 608, 475 P.2d 880] (*Jefferson*): "Although *arbitrators* are frequently, by the terms of the agreement providing for arbitration, . . . given broad powers [citation], *appraisers* generally have more limited powers. As stated in *Hughes v. Potomac Ins. Co.* [(1962)] 199 Cal.App.2d 239, 253 [18 Cal.Rptr. 650] ([*Hughes*]): 'The function of appraisers is to determine *the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.*' " (Third italics added; see also *Figi v. New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 777 [166 Cal.Rptr. 774] [an appraiser "only evaluates the loss and does not consider questions of policy, interpretation or scope of coverage"].)

The *Sharma* court repeated this rule, citing the language of section 2071 and the *Jefferson* and *Hughes* opinions. (*Sharma, supra,* 160 Cal.App.3d at p. 1065.) The *Sharma* court elaborated as follows: "In no authority is it suggested that an appraisal panel is empowered to determine whether an insured lost what he [or she] claimed to have lost or something different. [¶]

When an insurer disputes an insured's description . . . of the lost or destroyed property, it necessarily claims the insured *misrepresented*—whether innocently or intentionally—the character of the loss in filing a proof of loss. In turn, this claim opens the door to allegations of *fraud*. Were an insurer permitted to include the former issue within the scope of an appraisal, a determination in the insurer's favor would foreclose a court from determining one essential element of fraud in any subsequent litigation. Certainly, an insurer is free to litigate whether the insured has misrepresented what he [or she] lost; but it is beyond the scope of an appraisal." (*Id.* at pp. 1065–1066.) When an appraisal panel exceeds its powers by deciding coverage issues, and the award cannot be corrected without affecting the merits of the decision, the decision must be vacated. (*Id.* at p. 1066.)[3]

A fire insurance policy must also provide: "No permission affecting this insurance shall exist, or waiver of any provision be valid, *unless granted herein or expressed in writing added hereto*. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein." (§ 2071, subd. (a), italics added.) Although the portions of the Allstate policy in the record do not include this waiver provision, we must presume it contains this language, and in any event, Allstate is bound by the language. "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom," with an exception not relevant here. (§ 2070.)

■ "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning. [Citations.]" (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ Here, the supposed waiver of the appraisal panel's circumscribed authority, appearing in the appraisal award form, does not comply with the plain language of section 2071, subdivision (a). Accordingly, on this ground the court erred by denying Kacha's petition to vacate the appraisal award.

### B

■ Moreover, under common law, " ' "[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The

---

[3] Allstate attempts to distinguish the *Sharma* opinion on its facts. Although different factually, the general rule of *Sharma, Jefferson* and *Hughes* is applicable here, as well, of course, as section 2071.

burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right." (*Ibid.*) " ' "Waiver always rests upon intent." ' " (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 60 [35 Cal.Rptr.2d 515].)

 In our view, the introductory language of the appraisal award form is ambiguous and does not, standing alone, establish a waiver of rights. Allstate asserts that the "if any" phrase authorized the appraisers to decide whether actual damage to claimed items was caused by the Cedar Fire. It appears just as reasonable, however, to interpret the "if any" phrase to mean the appraisers could determine whether claimed items actually had *any* damage, and if not, there would be no award for those items. A writing is ambiguous if it is susceptible to more than one reasonable interpretation. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554], citing *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641].)

Kacha, however, does not argue ambiguity. Rather, he asserts that regardless of the language of the appraisal award form, the evidence reasonably permits only one finding, that he never intended any waiver of *Sharma* or section 2071. From our review of the entire record, we agree with Kacha.

After the November 14 and 15, 2004 appraisal hearings, the parties had not agreed on a form for the award. On December 22 Dawson and Amato agreed to the form. In a declaration, Dawson stated his intention in modifying Amato's original draft was to "delet[e] the specific reference to causation from each and every item to be appraised," and he never intended a waiver of *Sharma.*

On December 29, a week after Dawson supposedly waived *Sharma* on Kacha's behalf, he submitted a brief to the appraisal panel in which he objected numerous times to it deciding causation issues. On December 30, a Thursday, as soon as Dawson learned of Allstate's interpretation of the form—that it constituted a waiver of *Sharma*—he complained to Amato. Further, at the outset of the last day of the appraisal hearing, January 4, 2005, Dawson objected and both he and Lawrence, Kacha's counsel, advised the

panel it lacked authority to determine coverage issues. Contrary to Allstate's assertion, given the intervening New Year's holiday, Kacha acted in a timely manner. This is not a case in which an insured acquiesced to a procedure and complained only after receiving an unfavorable award. To the contrary, the undisputed competent evidence shows Kacha consistently disputed the appraisers' authority to determine coverage issues. Indeed, Amato's declaration conceded that on January 4, Kacha objected to the appraisal panel determining coverage issues, but the objection "was met with resistance by panel members."

A waiver may ordinarily be revoked absent a showing of prejudice. (See, e.g., *Maddy v. Castle* (1976) 58 Cal.App.3d 716, 722 [130 Cal.Rptr. 160], disapproved on another ground in *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261].) The appraisal award form contained no reference to *Sharma* or its precursors, or to section 2071, but to any extent it could arguably be construed as a waiver of those authorities, Kacha's position on December 29, 2004, in Dawson's brief to the appraisal panel, and at the January 4, 2005 hearing, constituted a revocation. Further, Allstate did not show it suffered any prejudice between December 22 and January 4.

The court's finding that Kacha waived the protection of *Sharma* and section 2071 is unsupported by substantial evidence. Accordingly, the court erred by denying his motion to vacate the appraisal award as exceeding the panel's jurisdiction.[4]

## C

Allstate contends there is no evidence the appraisal panel made any coverage determinations, and thus there is no statutory ground for judicial review of the award. Allstate asserts the panel awarded zero for numerous items Kacha claimed as covered simply because it found those items had no damage, and not because it rejected coverage for damaged items on causation grounds.

In rejecting Kacha's application to the appraisal panel to correct the award, however, the panel relied solely on his supposed waiver of the protections of *Sharma* and section 2071. Further, the panel awarded zero for items that had suffered damage from some source, such as the composite decking. In its appraisal brief, Allstate argued that photographs taken shortly after the Cedar

---

[4] Given our holding based on other evidence, we are not required to reach Kacha's contention the trial court erred by disallowing the declaration of Charleston, the appraiser he designated, under Evidence Code section 703.5. We are also not required to consider his argument that Dawson lacked authority to bind him to the terms of the appraisal award form.

Fire showed that neither the fire nor excessive heat reached the composite decking, as "the vegetation around the decking was not damaged by the fire. . . . [¶] According to [our consultant], the unevenness of the deck was caused by improperly set and unsecured joists," and the estimated cost of repair for that condition, "not related to the fire," was $489.89.

For another example, the panel awarded zero for damage to the custom mahogany front entry door with triple-glazed art glass. Kacha sought $29,830.84 in damages. Allstate advised that in its expert's opinion discoloration of the door "could have been caused by sunlight, weather and/or a breakdown of the factory applied finish." It also advised that photographs showed the damage preexisted the Cedar Fire. Alternatively, Allstate argued that if the fire damaged the door, it could be refinished for $8,436.96.

We are not required to conduct a similar analysis for other items. It is apparent that the appraisal panel made at least some coverage determinations, thereby exceeding its authority.

III

*No Waiver of Challenge by Acceptance of Benefits*

We also agree with Kacha's contention the trial court erred by finding he waived his challenge of the appraisal award because he "accepted and retained" Allstate's payment of the award.

The trial court relied on *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 661 [98 Cal.Rptr.2d 378] (*Louise Gardens*), in which the appellate court held the conduct of the insured after the issuance of an appraisal award "constituted an adoption and ratification" of the award and barred a challenge to it. There, the insured (1) failed to file any petition to vacate or correct the award, (2) filed an action to *enforce* the award (a cross-complaint to the insurer's declaratory relief action), and (3) received and accepted full payment of the award. (*Id.* at pp. 654–655, 661.) Fourteen months after accepting payment, the insured filed a petition challenging the trial court's earlier denial of its petition to remove the insurer's designated appraiser for bias. (*Id.* at p. 655.)

The *Louise Gardens* court relied on *Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 822–824 [128 Cal.Rptr. 115], explaining that in *Trollope* the court "held that the principles applicable to acceptance of the benefits of a judgment and the resulting waiver of the right to appeal therefrom applied

with equal force to an arbitration award. [Citation.] 'The theory behind the "acceptance of benefits" rule is that if a person voluntarily acquiesces in or recognizes the validity of a judgment or decree, or otherwise takes a position inconsistent with the right of appeal therefrom, he [or she] thereby impliedly waives his [or her] right to have such judgment, order or decree reviewed by an appellate court. [Citations.] Accordingly, since arbitration is for the benefit of both parties, it would be incongruous to hold that a party can accept the award and the payment thereunder and then attack the award on appeal.' " (*Louise Gardens, supra,* 82 Cal.App.4th at p. 661.)

*Louise Gardens* is easily distinguishable from this case. Within the statutory 10-day limitation period, Kacha applied to the appraisal panel for reconsideration (Code Civ. Proc., § 1284), and within the 100-day limitation period, he petitioned the superior court for an order vacating the award (*id.,* § 1288). Allstate sent two checks to Dawson, made payable to Kacha, his wife and Professional Insurance Evaluations, but there is no suggestion the checks were solicited. Further, it is undisputed that the checks have not been cashed. Allstate surely knows the checks have not been cashed, and by raising no objection it has essentially agreed to Kacha or Dawson holding them pending resolution of this appeal. (See *Phillips v. Isham* (1951) 105 Cal.App.2d 608, 611 [233 P.2d 637].)[5] Allstate cites no case finding waiver under facts similar to those here.

■ The "rule that voluntary acceptance of the benefits of a judgment bars appeal therefrom is subject to qualifications." (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 86 [16 Cal.Rptr.2d 575].) The party relying on a waiver theory "must demonstrate a 'clear and unmistakable acquiescence in' the judgment, an 'unconditional, voluntary, and absolute' acceptance of the fruits thereof." (*Ibid.*; see also *Phillips v. Isham, supra,* 105 Cal.App.2d at p. 611.) In *Phillips v. Isham,* the court held the plaintiffs did not waive review of a judgment when the defendants sent plaintiffs' counsel the amount of a judgment, and counsel notified the defendants he deposited the funds in his trust account pending resolution of an appeal the plaintiffs intended to file. (*Phillips v. Isham, supra,* at pp. 609–610.) The court concluded "there was no such acceptance of benefit of the orders appealed from as would justify a dismissal of the appeal." (*Id.* at p. 611.)

Likewise, under the facts here we find no waiver.

---

[5] The checks were issued on April 7, 2005, and they contain the notation they are void if not presented for payment within one year. We deny Kacha's request that we take judicial notice of the original checks.

## DISPOSITION

We reverse the judgment and direct the trial court on remand to enter an order granting Kacha's petition and vacating the appraisal award. Kacha is entitled to costs on appeal.

McIntyre, J., and Aaron, J., concurred.

A petition for a rehearing was denied July 25, 2006, and respondent's petition for review by the Supreme Court was denied September 20, 2006, S145677. Chin, J., did not participate therein.