Filed 6/25/14  Reid v. AMCO Ins. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DONNA WILKERSON REID, | |
| Plaintiff and Appellant, | E055812 |
| v. | (Super.Ct.No. RIC1118839) |
| AMCO INSURANCE COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia and Ronald L. Taylor, Judges.[1]  Affirmed.

Law Office of Henry B. LaTorraca and Henry B. LaTorraca for Plaintiff and Appellant.

---

[1] Judge Taylor is a retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Horvitz & Levy, Lisa Perrochet, Jeremy B. Rosen, Katherine Perkins Ross; Cannon & Nelms, Anthony L. Cannon, Julia A. Mouser and Garret F. Smith for Defendant and Respondent.

Plaintiff and appellant Donna Wilkerson Reid[2] appeals from a judgment confirming an insurance appraisal award. Plaintiffs filed two unrelated claims with defendant and respondent AMCO Insurance Co. (AMCO) for water damage at their Temecula home. When AMCO and the Reids could not agree on the value of certain damaged items, they proceeded to an appraisal in accordance with the terms of their

---

[2] This appeal originally named William and Donna Reid, husband and wife, as plaintiffs and appellants. Mr. Reid died on March 13, 2014, and on April 10, 2014, this court granted Mrs. Reid's motion to substitute herself as the successor in interest of Mr. Reid. For clarity, we will refer to both Mr. and Mrs. Reid as plaintiffs and appellants in this opinion.

insurance policy, as mandated by Insurance Code section 2071.[3]  As specified by statute and the insurance policy, the appraisal was conducted by three people—an appraiser selected by each party and an umpire agreed upon by the two party-selected appraisers. The appraisal award is determined by the value agreed upon by at least two of three members.  In this case, the umpire agreed with AMCO's appraiser, Tim DeLise, that the total value of the loss was $24,000.  The Reids' appraiser, Ted Merrill, had valued the loss at nearly $400,000.  The Reids filed a petition in the trial court to vacate the appraisal.  AMCO opposed that petition and requested the trial court affirm the appraisal award.  The trial court denied the Reids' petition and confirmed the appraisal award.

---

[3]  Insurance Code section 2071, subdivision (a), sets out the provisions that must be included in a standard fire insurance policy issued in California.  One of the mandated provisions is entitled "appraisal" and states, "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request.  Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located.  Appraisal proceedings are informal unless the insured and this company mutually agree otherwise.  For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.  The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.  In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled."

In this appeal from the judgment confirming the appraisal award, the Reids contend, first, that the trial court erred in refusing their request for a statement of decision, and next, that the trial court erred in denying their petition to vacate the appraisal award. We disagree with both claims and, therefore, we will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2009 and August 2009, water from unrelated sources leaked into the Reids' Temecula home and caused damage. The January leak came from a water softener on an exterior wall outside the master bedroom. The August leak was from a waterline in the concrete slab under a common wall between the guest bedroom and bathroom. The first leak damaged carpeting, the second caused what the parties call "cupping" in the Brazilian cherry hardwood floors in the family room. Cupping refers to a slight upward curve in the tongue and groove edges of hardwood floorboards, most likely caused when wood is exposed to moisture and then the moisture is removed.

The Reids submitted separate claims to AMCO for both incidents. In addition, they claimed their house was not habitable as a result of the leak under the concrete slab. They also claimed the leak had caused cracks in the slab. AMCO provided the Reids with outside living expenses so they could move into a rental house.

In January 2010, AMCO and the Reids conducted an inspection to determine the source of the August water leak. In the course of cutting the concrete slab to expose the pipes, the sawcutter cut through the hot water recirculating supply line. The interior of all the cooper waterlines apparently had been coated with epoxy to prevent leaks. A representative of the company that installed the epoxy coating was present when the

4

recirculating supply line was cut and recommended it be repaired with a SharkBite. AMCO agreed to repair the line but would not agree to replace the entire line, as the Reids requested. The Reids discovered in addition to the previously mentioned damage, that carpeting in their home office had also been damaged by water.

Although it disputed coverage, AMCO paid the Reids about $24,000 in early 2010 to repair the damaged hardwood flooring throughout the house. In April 2010, the Reids requested an appraisal because they disputed AMCO's valuation of the loss caused by damage to the hardwood floor. The Reids selected Ted Merrill as their appraiser. AMCO selected Tim DeLise. The Reids filed a petition to have DeLise disqualified on the ground that he was not impartial. They dismissed that petition before the appraisal hearing.

The parties disagreed on the value of four items: (1) the carpet and pad in the Reids' home office; (2) cracks in the concrete slab; (3) the cut in the hot water recirculation line; and (4) the damage to the hardwood flooring. Before the appraisal hearing, DeLise and Merrill agreed on the cost to repair the carpeting and concrete slab.[4] Because they could not agree on the cost to repair the hot water recirculation line and the hardwood floor, the appraisers selected an umpire to conduct an appraisal.

The appraisal hearing took place over two days in September 2011. About six weeks before that hearing, the Reids repaired the damaged hot water recirculation line by replumbing their entire house and running the line overhead, at a cost of nearly $15,000.

---

[4] The appraisers set the value of the carpet and pad at $2,323.15, and the cost to repair the concrete slab at $6,700.

5

Tim DeLise, Ted Merrill, Mr. Reid, and others, testified at the hearing. In October 2011, the umpire issued the appraisal award in which he valued the cost to repair the hot water recirculation line (referred to in the award as the "plumbing line") at $1,496.97, and the cost to repair the hardwood floor at $10,066.98, the values established by AMCO's appraiser, Tim DeLise.[5] DeLise agreed with the umpire and signed the award in early November.[6] The Reids filed their petition to vacate the appraisal award on November 23, 2011. Following a hearing on February 7, 2012, the trial court denied that petition. In a separate judgment, the trial court affirmed the appraisal award and entered judgment, accordingly.[7]

Additional facts will be recounted below as pertinent to our resolution of the issues the Reids assert in this appeal.

### DISCUSSION

"Appraisal hearings are a form of arbitration and are generally subject to the rules governing arbitration. Judicial review of an arbitration, or appraisal award, is circumscribed. [Citation.]" (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023,

---

[5] Ted Merrill, the Reids' appraiser, valued the plumbing line at $22,634.40, and the hardwood floor at $272,610.

[6] The record on appeal includes at least two copies of the appraisal award. We cite to the copy attached to the Reids' petition to vacate the award.

[7] The judgment, submitted by the Reids' attorney, incorrectly states it is the result of a court trial on February 7, 2012, before the Honorable Daniel Ottolia. Judge Ottolia conducted the hearing on the Reids' motion to vacate the appraisal award, but he did not address the petition to confirm the award at the hearing on February 7, 2012.

1031 (*Kacha*).)  The circumstances under which a court may set aside an appraisal award are set out in Code of Civil Procedure section 1286.2, subdivision (a).[8]  Those circumstances are:  "(1) The award was procured by corruption, fraud or other undue means; [¶]  (2) There was corruption in any of the arbitrators; [¶]  (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator; [¶]  (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; [¶]  (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title; [¶]  (6) An arbitrator making the award either:  (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision."  (§ 1286.2, subd. (a).)

### 1.

### STANDARD OF REVIEW

"We review the trial court's ruling on a challenge to an appraisal award under a de novo standard, drawing every reasonable inference to support the award.  [Citation.]  To the extent the court's ruling rests on issues of disputed fact, however, we apply the

---

**8**  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

substantial evidence test.  [Citation.]  "'[I]f the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance.  Obviously the word cannot be deemed synonymous with 'any' evidence.  It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case.'"  [Citation.]"  (*Kacha*, *supra*, 140 Cal.App.4th at p. 1031.)

## 2.

## ANALYSIS

### A.  Statement of Decision

The Reids requested, both orally and in writing, a statement of decision on their petition to vacate the appraisal award.  The trial court denied their request "[b]ecause this is not a trial exceeding 24 hours."  However, the trial court did orally find "no evidence of corruption, fraud, or umpire maleficence [*sic*] in this case."

Section 1291 requires a statement of decision, "if requested pursuant to Section 632, whenever an order or judgment . . . is made that is appealable under this title," i.e., title 9 of part 3 of the Code of Civil Procedure, entitled "Arbitation."  Appealable orders or judgments under "this title" are set out in section 1294:  "(a) An order dismissing or denying a petition to compel arbitration.  [¶]  (b)  An order dismissing a petition to confirm, correct or vacate an award.  [¶]  (c) An order vacating an award unless a rehearing in arbitration is ordered.  [¶]  (d)  A judgment entered pursuant to this title.  [¶] (e)  A special order after final judgment."  Although an order dismissing a petition to vacate an arbitration award is appealable, an order denying such a petition is not.  The

8

trial court in this case denied the Reids' petition to vacate the appraisal award and, therefore, the court did not issue a separately appealable order.**9** Consequently, the trial court was not required to issue a statement of decision in connection with its order denying the Reids' petition to vacate the appraisal award.**10**

Moreover, section 1291 must be read in conjunction with section 632, which requires a statement of decision only "'upon the trial of a question of fact.'" (See *Painters Dist. Council No. 33 v. Moen* (1982) 128 Cal.App.3d 1032, 1042.) In denying the Reids' petition to vacate the appraisal award, the trial court did not resolve questions of fact because the pertinent facts were undisputed. Instead, the trial court determined only whether those undisputed facts established any of the grounds set out in section 1286.2 pursuant to which an appraisal award may be vacated.

## B. Corruption, Fraud, or Other Undue Means

The Reids contend the trial court erred in denying their petition to vacate the appraisal award because AMCO's appointed appraiser, Tim DeLise, allegedly had an existing relationship with AMCO, and its attorney in this case, as a result of which he

---

**9** Although an order denying a petition to vacate an appraisal award is not separately appealable and, therefore, a statement of decision is not required, the Reids still may challenge the trial court's denial of that petition in an appeal from the judgment confirming the appraisal award. (See, e.g., *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [Fourth Dist., Div. Two] [order compelling arbitration is not separately appealable but validity of order may be challenged in appeal from judgment confirming arbitration award].)

**10** When a trial court denies a petition to vacate an appraisal award, the ruling necessarily implies the required findings, i.e., the evidence submitted in support of the petition did not establish any of the grounds set out in section 1286.2. Consequently, a statement of decision would not serve any purpose.

was neither disinterested nor impartial, as required by the insurance policy and Insurance Code section 2071. Therefore, they contend the appraisal award was obtained in violation of Code of Civil Procedure section 1286.2, subdivision (a)(1), because it was "procured by corruption, fraud or undue means."

Under Insurance Code section 2071, subdivision (a), each party must select "a competent and disinterested appraiser," who then jointly select a competent and disinterested umpire.[11] After AMCO selected DeLise as its appraiser, the Reids filed a petition in superior court to have him disqualified.[12] In that petition, the Reids alleged, among other things, that DeLise was not impartial and, therefore, should be disqualified as AMCO's appraiser because of his past and current relationship with AMCO and its attorney, Cannon & Nelms. The Reids, as previously noted, dismissed the petition to disqualify DeLise without prejudice and proceeded with the appraisal.

By dismissing the petition and proceeding with the appraisal, the Reids forfeited any claim regarding DeLise's impartiality based on facts known to them at the time. (See, e.g., *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1126 [forfeiture results from failure to timely raise a known right].) Because the Reids had actual knowledge of the

___

[11] The appraisal provision in the homeowner's insurance policy AMCO issued to the Reids states the appraiser must be "competent and impartial."

[12] A copy of that petition is included in AMCO's opposition to the Reids' petition to vacate the appraisal award.

facts alleged in their petition to disqualify DeLise, they may not rely on those same facts to support their challenge to the validity of the appraisal.[13]

For this same reason, we conclude the Reids may not rely on any facts they knew before the appraisal hearing in September 2011 to support their claim DeLise was not impartial.  By proceeding with the appraisal rather than reasserting an objection to DeLise's impartiality, the Reids impliedly forfeited those claims.  According to his declaration in support of the petition to vacate the appraisal award, the Reids' attorney, Mr. LaTorraca, knew in July 2011 all the facts the Reids relied on to support their claim DeLise was not impartial, including the following:  AMCO had purportedly directed DeLise to reject all four umpires on the Reids' list; in January 2010, before AMCO selected DeLise as their appraiser in this matter, AMCO requested and DeLise provided annotated residential construction performance guidelines; and DeLise's contract with AMCO for his appraisal work also referred to consulting.[14]

---

[13] AMCO requests we take judicial notice pursuant to Evidence Code section 459, subdivision (a), of DeLise's declaration filed in the trial court as part of AMCO's opposition to the Reids' petition to disqualify him as an appraiser.  That declaration is not crucial to our resolution of the Reids' claim on appeal.  Therefore, the judicial notice request is denied.

[14] To support this claim, the Reids cite the points and authorities they submitted to support their motion to vacate the appraisal award.  In its opposition to that motion, AMCO denied it had retained DeLise as a consultant.  AMCO asserts the contract in question was a boilerplate fee agreement that included provisions to cover various services DeLise might perform.  Neither the Reids nor AMCO cite to the actual contract, which is attached as an exhibit to the Reids' motion to vacate the appraisal award.  The contract is entitled "Appraisal/Consulting Agreement" and is generic in order to cover both types of employment.

According to his declaration, Mr. LaTorraca also knew before the appraisal hearing all the facts the Reids relied on to support each of their claims the appraisal award should be vacated. More particularly, in addition to the facts previously noted, Mr. LaTorraca knew DeLise had obtained a plumbing permit for the Reids' house so he, in turn, could determine if the County of Riverside would approve use of a SharkBite to repair the broken hot waterline in the Reids' concrete slab. Although DeLise apparently was not authorized by the Reids to obtain the permit, that lack of authority is irrelevant, as the umpire found.[15] The umpire thoroughly discussed in his appraisal award the efficacy of the SharkBite as the best and most cost effective means to repair the hot water recirculation line under the concrete slab, including the fact that a county building inspector initially declined to permit that form of repair but ultimately agreed to its use.

The Reids do not cite any authority to show what acts constitute fraud, corruption, or undue means within the meaning of section 1286.2. In fact, they simply do not address that dispositive aspect of their claim. Instead, they merely make the assertion. The party challenging an arbitration award bears the burden of demonstrating reversible

---

[15] As the umpire described it, "One of the bigger skirmishes fought by the parties during the arbitration has to do with the issuance of the building permit applied for and received by Tim DeLise . . . in his effort to satisfy Ted Merrill that SharkBite push-fit fitting was accepted as an approved method for under slab [plumbing] line repairs by the County of Riverside. Insured argues in its [*sic*] closing brief that the building department change in policy is not retroactive; however, there was no evidence to that effect adduced at [the] hearing. Clearly even if a building permit were necessary to do this repair, it could have been granted upon application—but it is now a moot issue. The Neutral Umpire finds, for purposes of resolving the disagreements between the appraisers, this issue is completely irrelevant and has no bearing to the appraisal process. Accordingly, no findings shall be made or issued thereon."

error.  (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 [Fourth Dist., Div. Two].)  The Reids have failed to meet that burden; they have not shown DeLise's act of obtaining a building permit without their permission, constitutes fraud, corruption, or undue means within the meaning of section 1286.2, subdivision (a)(1) or (2).

For this same reason, i.e., failure to cite authority to support the assertion, we reject the Reids' argument that because use of the SharkBite was not authorized at the time they incurred the loss, it cannot be considered in determining the value of the loss. The Reids have not shown this assertion is true and, if true, how it constitutes a basis under section 1286.2, subdivision (a), to vacate the appraisal award.

The Reids also contend DeLise was not impartial because he testified under oath at the appraisal hearing as both a percipient and expert witness for AMCO.  Assuming without actually deciding that such testimony would cause DeLise to be biased, the Reids have not cited facts to support their assertion that DeLise testified as either a percipient witness or expert, rather than as AMCO's appointed appraiser.  DeLise did testify under oath, but only because the Reids demanded all witnesses do so.  DeLise also testified regarding the apparent efficacy of one form of repair over another in order to establish the value of the loss.  For example, the umpire stated in the appraisal award that the Reids claimed the SharkBite caused copper corrosion, as depicted in a photograph they had offered to support that claim.  The umpire noted that DeLise rebutted the assertion with testimony that the corrosion was not caused by the SharkBite but rather by water trapped in poly wrapped around the pipe.  Similarly, DeLise testified that sanding and refinishing

13

the damaged hardwood floors was the preferred method to rectify that damage. The Reids claim DeLise's testimony makes him either a percipient or expert witness, but they do not discuss the point. Therefore, we will not discuss it either. Instead, we conclude the Reids have not established any aspect of their claim.

### C. Causation

The Reids contend the appraisal award must be vacated because it improperly considers causation, namely that the cupping of the hardwood floors was not caused by a concrete slab that was still wet. To support their claim, the Reids cite *Kacha*, in which the appraisers found several claimed losses had not been caused by the covered event, in that case a fire and, therefore, they declined to value those losses. (*Kacha*, *supra*, 140 Cal.App.4th at pp. 1325-1036.) Division One of this court held the appraisers had improperly made coverage determinations when for example they awarded nothing for damage to a custom mahogany entry door, which they found could have been damaged by sunlight rather than the fire. (*Ibid*.)

The appraisal award in this case does not address causation. Instead, it determined the cost to repair the damage to the hardwood floors was the cost of sanding and refinishing them because the slab was no longer wet. In arguing otherwise, the Reids contend the umpire found the slab had not been damaged by water saturation. The Reids' claim is disingenuous and irrelevant. Both appraisers agreed the concrete slab had been damaged and also agreed on the cost to repair the damage. Consequently, the issue of damage to the concrete slab was not addressed in the appraisal hearing. Moreover, the parties did not dispute that the hardwood floors had been damaged by water or moisture.

14

The Reids' appraiser claimed the slab was still wet and, therefore, the hardwood flooring had to be replaced entirely, which in our view is a non sequitur.[16] AMCO's appraiser claimed the slab was not wet and, therefore, the hardwood flooring could be repaired by sanding and refinishing. The umpire agreed with AMCO's appraiser, finding there was no evidence the slab was still wet.

### D. Request to Reopen Appraisal Hearing

The appraisal hearing concluded on September 7, 2011. On November 2, 2011, the Reids' attorney emailed the appraisers to ask them to reopen the appraisal hearing and to consider the results of moisture testing conducted on the concrete slab. Those tests were conducted by an employee of Mr. Reid's on October 12, 13, and 14. The tests disclosed the moisture content in the concrete slab far exceeded the acceptable maximum. Apparently, neither DeLise nor the umpire expressly rejected the Reids' request to reopen the hearing. However, DeLise impliedly rejected the request by agreeing with the umpire and signing the appraisal award on November 2, 2011.

The Reids contend the appraisers' refusal to reopen the hearing constitutes grounds to vacate the award under section 1286.2, subdivision (a)(5). That subdivision, as previously noted, states an arbitration award may be vacated if "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to

---

[16] Presumably, if the concrete slab was still wet, as the Reids claim, then the hardwood floors will sustain additional damage, and the Reids will have to make another claim on their homeowner's insurance.

15

hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (§ 1286.2, subd. (a)(5).) The Reids' claim, in our view, is meritless.

At the outset, we note the Reids again make a bald assertion without discussion of the facts or pertinent legal authority. They also do not explain why they did not conduct the moisture tests earlier so that the results could be presented during the appraisal hearing. Mr. Reid is a general contractor and has also worked as an appraiser and an umpire. (See *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 571 [Mr. Reid was selected by the insurer to be that party's appraiser].) Presumably, he would know the evidence pertinent to an appraisal of this type. More importantly, the evidence regarding the moisture content of the slab is irrelevant. As previously discussed, the appraisers agreed on the cost to repair the slab. That the slab was still wet was not relevant to show the cost to repair the hardwood flooring, the Reids' repeated assertion to the contrary notwithstanding. That evidence was relevant at most to show that unless corrected, the moisture in the slab would continue to damage the hardwood flooring.

## E.  Validity of Judgment

The Reids note in their opening brief that the judgment in this case was signed by a different judge than the one who heard their motion to vacate the appraisal award. To the extent the Reids cite that fact as support for setting aside the judgment, we must reject the claim.

First, the Reids once again fail to discuss the significance of the discrepancy. They have done nothing but note the fact. Therefore, they have not raised an issue we must address. However, in order to dispel any suggestion of error or impropriety, we briefly explain. The judgment in this case was entered on AMCO's request to confirm the appraisal award, included in their opposition to the Reids' motion to vacate the award. That judgment, which as previously noted was prepared by the Reids' attorney and makes reference to the Reids' motion to vacate the appraisal award, is signed by Judge Ronald Taylor. The Reids' motion to vacate the appraisal award was properly disposed of by Judge Daniel A. Ottolia, the judicial officer who presided at the hearing on that motion, as evidenced by the order denying the motion.

"'Under Code of Civil Procedure section 1286, once a petition to confirm, correct, or vacate is filed, the superior court has only four choices: It may (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceedings.' [Citation.] 'A party to an arbitration may seek to vacate or correct the award or to have it confirmed. [Citation.] Upon a petition seeking any of those results, the court *must confirm* the award, *unless* it either vacates or corrects it. [Citation.]' [Citation.]" (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8.)

Under the noted authority, Judge Ottolia rather than Judge Taylor, should have signed the judgment confirming the appraisal award because he denied the petition to vacate that award. However, the Reids have not shown prejudice resulting from this oversight. Therefore, we will affirm the judgment.

17

## DISPOSITION

The judgment confirming the appraisal award is affirmed.

Costs on appeal awarded to AMCO.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

18