Filed 7/21/21  Rees v. American Security Insurance Co. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SHAWN REES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMERICAN SECURITY INSURANCE COMPANY, ET AL.,<br><br>    Defendants and Respondents. | 2d Civil No. B302938<br>(Super. Ct. No. 18CVP-0352)<br>(San Luis Obispo County) |

Shawn Rees appeals an order denying his petition to vacate an appraisal award he believes undervalues the cost to repair flood damage to his house.  He contends the appraisers exceeded the scope of their authority when preparing the award.  (Code Civ. Proc., § 1286.2, subd. (a)(4).)[1]  We conclude the appraisers did not exceed their authority.  The Award conforms in all respects to the appraisal provision contained in Rees' residential

---

[1] We cite the Code of Civil Procedure exclusively.

flood policy. The record does not show he and his flood insurer agreed to modify or deviate from this provision.

We affirm the trial court's ruling and remand the case with orders to confirm the award.

FACTUAL AND PROCEDURAL BACKGROUND

Rees's Paso Robles duplex sustained major flood damage during an unseasonably wet thunderstorm in July of 2015. He reported the damage to his flood insurer, American Security Insurance Company (ASIC), which immediately sent an adjuster to inspect the damage. The adjuster initially set the actual cash value (ACV) of Rees's losses as $43,226.08 but later revised the amount to $64,631.70 after Rees documented the need for additional repairs.[2] ASIC notified Rees by letter on June 30, 2017 that it had finished reviewing his claim. Enclosed was a document titled "Building Estimate" that itemized the claim's total labor and materials costs.

The figures in the Building Estimate fell far below what Rees expected. He disputed the amounts allocated for repairing and replacing most items, including wall plaster, HVAC ducting, cabinets, countertops, flooring, paint, and exterior stucco. Rees insisted his costs would exceed policy limits. He demanded ASIC correct its estimates to align with FEMA standards for water damage restoration and pay the higher rates charged by contractors when handling materials contaminated by Category 3

---

[2] These figures represented losses to the main dwelling under Coverage A of the ASIC policy. Rees received an additional $17,594.00, or ten percent of his policy limits, for losses to his garage conversion under Coverage B. The garage conversion claim is not at issue in this case.

flood water.[3]  He also noted the Building Estimate did not allocate sufficient money to repair the subfloors and to excavate the crawl space under the house.

ASIC insisted it adjusted the claim properly.  It eventually invoked a policy provision requiring the insurer and the policyholder to resolve valuation disputes through an appraisal process.[4]  ASIC and Rees selected Kathleen Conway and Woodman White, respectively, to serve as their appraisers. Conway and White inspected the property and co-signed an appraisal award on July 17, 2018 setting the ACV of Rees's losses at $94,758.97 (the "Award").  This exceeded ASIC's total ACV by more than $30,000.00.[5]

---

[3] "Category 3" is the highest level of water contamination according to industry standards established by the Institution of Inspection, Cleaning and Restoration Certification (IICRC).  This includes surface and ground water intrusion as well as wind-driven rain from storms and hurricanes.

[4] The ASIC policy describes the appraisal process in Section O of its General Conditions.  The provision states in relevant part:  "If we fail to agree with the first named insured on the actual cash value or replacement cost of the damaged property to settle upon the amount of loss, then either of us may demand an appraisal of the loss.  In this event, the first named insured and we shall each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. . . .  The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss."

[5] Rees told the trial court ASIC paid only a part of the additional $30,000.00 awarded to him by the appraisers.  The

3

Rees believed the appraisers' figures, while higher, still undervalued his actual losses by deviating in key respects from ASIC's Building Estimate. He petitioned to vacate the Award on the grounds the appraisers exceeded the scope of their authority. (§§ 1286.2, subd. (a)(4), 1286.4.) The trial court denied the petition after holding an evidentiary hearing. It then denied Rees's motion for reconsideration. This appeal followed.

DISCUSSION

*1. Appraisal of Insured Losses*

Appraisal is a form of arbitration designed to resolve disputes between insurers and policyholders over the value of covered losses. Appraisal provisions are considered "agreements" for the purposes of Code of Civil Procedure section 1280, subdivision (a) and thus subject to the statutes governing contractual arbitration. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658.) Judicial review of appraisal awards is circumscribed by those statutes to certain situations, such as when the appraisers "exceed[] their powers." (§ 1286.2, subd. (a)(4); *Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031 (*Kacha*).) "It is not the court's role to review the merits of the controversy or to determine whether the evidence is sufficient to support the appraisal award." (*Lee v. California Capital Ins. Co.* (2015) 237 Cal.App.4th 1154, 1165.)

"We review the trial court's ruling on a challenge to an appraisal award under a de novo standard, drawing every reasonable inference to support the award." (*Kacha, supra,* 140 Cal.App.4th at p. 1031.) We apply the substantial evidence

_____

trial court refrained from considering this allegation because it went beyond the scope of his petition. We refrain as well.

4

standard to the extent the ruling rests on factual determinations. (*Ibid.*)

### 2. The Appraisers Did Not Exceed the Scope of Their Authority

Rees acknowledges the appraisers affixed higher ACV to his losses than ASIC did.[6] He asserts the Award nevertheless undervalues his losses because the appraisers improperly jettisoned undisputed parts of the Building Estimate. For example, he contends the appraisers offset the higher cost of Category 3 labor and demolition rates by reducing ASIC's square footage calculations using an alternate method of measuring his house's floors. Rees describes this and other deviations from the Building Estimate as showing the appraisers exceeded the scope of their authority. (§ 1286.2, subd. (a)(4).) He contends their task was confined to re-assessing the Building Estimate's costs line-by-line because he and ASIC's adjuster considered the document the "[a]greed upon scope of repairs" for the damage observed in the days after the flood.

Rees's substantive criticisms of the Award do not show the appraisers exceeded their authority. The ASIC policy delineates this authority succinctly: to "separately state the actual cash value, the replacement cost, and the amount of loss to each item." Here, the Award states both actual cash value and replacement cost values. The appraisers' 25-page damages report lists the repairs and materials needed in each area of the house's two separate living quarters. Comparing it with ASIC's Building

---

[6] Rees accuses ASIC and the appraisers of modestly increasing these figures in a scheme to decrease Rees's chances of succeeding in a bad faith lawsuit against them. We find no evidence of corruption or fraudulent intent in the record.

Estimate[7] does not show the appraisers overlooked previously identified losses, as Rees alleges, or otherwise "misconceived [their] powers and duties or deliberately chose to ignore them." (*San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 565.)  Nor does the record show they omitted or reduced any damaged item's value for improper reasons.  (See, e.g., *Kacha, supra*, 140 Cal.App.4th 1023 [appraisal panel exceeded its authority by deciding issues relating to insurance coverage].)

We decline to read the policy as requiring the appraisers to overlay their revised estimates on top of ASIC's line-by-line or restricting them to the area calculations, mitigation techniques, or adjusting methodologies described in the 2017 Building Estimate or other documents submitted to them by Rees.  (See *Lee v. California Capital Ins. Co.*, *supra*, 237 Cal.App.4th at p. 1172 [appraisal panel need not "assign a loss value to every item claimed by the insured, regardless of whether that item is damaged"].)  The record contains no evidence Rees and ASIC agreed to modify the policy's appraisal provision.  We conclude the trial court properly denied Rees' petition to vacate and motion for reconsideration.

*3. The Trial Court Shall Confirm the Award on Remand*

A court presented with a petition under the arbitration statutes must confirm, correct, or vacate the award.  (§ 1286.)  The trial court denied Rees' petition to vacate and motion for reconsideration but did not explicitly confirm the Award in its written rulings.  It shall do so on remand.

---

[7] The record contains only the first seven pages of the Building Estimate's itemizations.  This prevents us from comparing many of ASIC's figures to the appraisers' figures.

6

CONCLUSION

We affirm the trial court's denial of the petition to vacate the appraisal award.  The case is remanded with instructions to confirm the Award.  ASIC shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED</u>


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


7

Hon. Linda D. Hurst, Judge
Superior Court County of San Luis Obispo
_____

Shawn Rees, in pro. per., for Plaintiff and Appellant.
Wargo & French, Jeffrey N. Williams, for Defendant and Respondent, American Security Insurance Company.